# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

Estate of Marmaduke C. Cope, deceased. Appeal of the Commonwealth of Pennsylvania.

*Taxation—Direct inheritance tax—Constitutional law—Act of May 12, 1897.*

The Act of May 12, 1897, P. L. 56, entitled "An act taxing gifts, legacies and inheritances in certain cases and providing for the collection thereof," is an act imposing taxes on the personal property therein specified, and has none of the features of an intestate law, or of an act regulating the disposition of property by will, or by instruments in the nature thereof, and is essentially and avowedly a "tax law."

The Act of May 12, 1897, P. L. 56, violates sections 1 and 2 of article 9 of the constitution of 1874, which declare that "All taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying the tax; but the general assembly may, by general laws, exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, and institutions of purely public charity.

" All laws exempting property from taxation, other than the property above enumerated, shall be void."

If the Act of May 12, 1897, P. L. 56, should be construed as an act intending to change the law of descent and succession so as to give the commonwealth a certain portion of every decedent's estate (if exceeding $5,000), it would violate article 3, section 7 of the constitution which declares "The general assembly shall not pass any local or special law . . . . changing the law of descent or succession."

The exemption of property less than the value of $250 in the collateral inheritance tax law, is not a valid precedent, since this exemption was

(1)

created in 1826, at a time when there were no limitations upon the power of the legislature as to special legislation and tax exemption.

Argued Jan. 20, 1899.    Appeal, No. 390, Jan. Term, 1898, by the commonwealth of Pennsylvania, from decree of O. C. Phila. Co., July T., 1898, No. 240, dismissing exceptions to adjudication.    Before STERRETT, C. J., GREEN, WILLIAMS, MC-COLLUM, MITCHELL, DEAN and FELL, JJ.    Affirmed.

Exceptions to adjudication.

At the audit the commonwealth claimed a tax of two per cent upon $917,519.88, under the Direct Inheritance Tax Act of May 12, 1897, P. L. 56.    The auditing judge, HANNA, P. J., disallowed the claim.

*Error assigned* was in dismissing exceptions to adjudication.

*Francis A. Osbourn* and *John P. Elkin*, with them *John C. Grady* and *Henry C. McCormick*, attorney general, for appellant.—The act is not unconstitutional because it contains an exemption of property from taxation not enumerated in section 1 of article 9 of the constitution: Com. v. Germania Brewing Co., 145 Pa. 83 ; Minot v. Winthrop, 162 Mass. 113.

In collateral and direct inheritance tax statutes exemptions have always been favored by lawmaking bodies, and have generally been sustained by the courts.    The title to the direct inheritance tax act is not defective: Horner v. Webster, 33 N. J. Law, 413 ; Allegheny County Home's Case, 77 Pa. 77 ; Com. v. Green, 58 Pa. 226 ; Yeager v. Weaver, 64 Pa. 425 ; Mauch Chunk v. McGee, 81 Pa. 433.

It does not offend against that provision of the constitution which requires uniformity of taxation: Com. v. Delaware Division Canal Co., 123 Pa. 594 ; Orcutt's App., 97 Pa. 179 ; Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283 ; Com. v. Brush Electric Light Co., 145 Pa. 147.

The question of interest and penalty cannot be successfully raised in the case now before the court: Merchants' & Manufacturers' Bank v. Penna., 167 U. S. 461.

The act may be passed under the power to regulate the transmission of estates : Strode v. Com., 52 Pa. 181 ; U. S. v. Perkins, 163 U. S. 627 ; Com. v. Gilpin, 3 Dist. Rep. 711 ; Com. v.

Herman, 16 W. N. C. 210; Mager v. Grima, 8 Howard, 490; Minot v. Winthrop, 26 L. R. A. 259; State v. Dalrymple, 3 L. R. A. 375; Kochersperger v. Drake, 47 N. E. Rep. 321; Eyre v. Jacob, 14 Gratt. 422; Wallace v. Myres, 38 Fed. Rep. 184; Pullen v. Commissioners of Wake County, 66 N. C. 361; Peters v. City of Lynchburg, 76 Va. 927; Schoolfield v. City of Lynchburg, 78 Va. 366; Mixter's Est., 28 W. N. C. 182.

The 16th section is not in conflict with the 1st section of the act if construed with it.

*Charles E. Morgan, Jr.*, for appellee.—The act of May 12, 1897, in so far as it provides for exemption from taxation thereunder of all estates of decedents where the balance for distribution, after payment of debts, does not exceed $5,000, is obnoxious to the constitution of 1874, whether such legislation be treated as a statute imposing a tax, or a law amendatory of the existing general laws regulating the succession to estates of decedents.

Treating it as a statute imposing a tax, it violates the requirements of uniformity contained in article 9, sections 1 and 2.

If regarded as an act amendatory of the existing laws regulating the succession to estates of decedents, it is forbidden by article 3, section 7 of the constitution, by which it is ordained that "the General Assembly shall not pass any local or special law . . . . changing the law of descent or succession."

1. Unless it be held that a succession tax, such as is sought to be imposed by the commonwealth by the said act of assembly, was not contemplated by, and is not within the scope of article 9, sections 1 and 2 of the constitution of 1874, the act is unconstitutional.

The act is unconstitutional because:

(*a*) It provides for a discrimination in favor of estates of $5,000 and less, against larger estates, and therefore is not uniform in its operation upon all subjects in the same class; and

(*b*) The exemption contained in the first proviso to the act is not only forbidden by said article 9, section 2, but renders the entire statute void.

By the first proviso it is enacted: "Provided, That personal property to the amount of $5,000 shall be exempt from the payment of this tax in all estates."

Whether the term " personal property," as used in the statute, was intended to refer to the entire balance of an estate of a decedent for distribution among legatees and distributees, or to the right, interest or estate of each legatee, is unimportant, as in either case the exemption destroys the uniformity of tax required by the constitution.

It is contended by appellant that section 2, article 9 of the constitution applies only to exemptions from all taxation, and does not prohibit an exemption from a tax upon a right to a legacy, the property constituting it being subject to the general property tax.

In reply we suggest that the tax imposed by the act is a tax upon the right to take the property of a decedent, and is the only kind of tax imposed, or which can be imposed, upon such right, and that, therefore, if the statute be sustained, a legatee taking $5,000 or under will be exempt from all taxation whatever upon his right to take.

With reference to the cases cited and relied upon by appellants, decisions of the courts of the United States and states other than Pennsylvania, we have only to remark that the language used in our constitution of 1874 differs substantially from that of the fourteenth amendment of the constitution of the United States, and the constitutions of other states considered in said cases.

Directly to the contrary of these cases are the following: Fox's Appeal, 112 Pa. 337; Missouri v. Switzler, 45 S. W. Rep. 245; City of Westport v. McGee, 30 S. W. Rep. 523; Minnesota v. Gorman, 40 Minn. 232; Wisconsin v. Mann, 76 Wis. 469. See also Curry v. Spencer, 61 N. H. 624, and Ohio v. Ferris, 53 Ohio, 314.

The reasoning of Mr. Justice BREWER, who delivered the dissenting opinion in Magoun v. Illinois Trust & Savings Bank, reported in full in appellant's paper-book, 170 U. S. 283, is directly in point (quoting from Justice BREWER's decision). The statute originally imposing the collateral inheritance tax was enacted in 1826. The subsequent statutes relating to this subject, including the act of 1887, are but amendments thereof and are therefore not in conflict with the constitution of 1874.

2. As a statute " changing the law of descent or succession " to decedent's estates it is unconstitutional, because it is special

legislation in favor of one class and against another, based upon a distinction wholly unreasonable, arbitrary and capricious: Article 3, section 7 of the Constitution; Ayars's Appeal, 122 Pa. 266.

The Supreme Court of New Jersey, in Wanser v. Hoos, 60 N. J. Law, 482, says: " The test of the generality of a law adopted, is that it shall embrace all and exclude none whose conditions and wants render such legislation equally appropriate to them as a class."

An act excluding perpetually from its operation counties containing more than 150,000 and also less than 10,000 inhabitants, is a local law. The perpetual exclusion of certain counties from the operation of law is not a classification of counties: Morrison v. Bachert, 112 Pa. 322; McCarthy v. Commonwealth, 110 Pa. 243; Commonwealth v. Patton, 88 Pa. 258; Davis v. Clark, 106 Pa. 377.

The division of the cities of this state into three classes by the act of 1874, held to be constitutional in Wheeler v. Philadelphia, 77 Pa. 338, is a necessary provision to meet the different needs of cities differing widely in population, but its effect is to distinguish municipalities in one class from those in another for purposes of municipal government only. Hence an act which applies to one class of cities only is unconstitutional if it relates to matters not under municipal control or affecting the municipal government: Weinman v. Railway Co., 118 Pa. 192; Ayars's Appeal, 122 Pa. 266; Ruan Street, 132 Pa. 257; Van Loon v. Engle, 171 Pa. 157; Chalfant v. Edwards, 173 Pa. 246; Phila. v. Haddington M. E. Church, 115 Pa. 291; Commonwealth v. Heckert, 7 Dist. Rep. 186; Wyoming Street, 137 Pa. 495; Philadelphia v. Cemetery Co., 162 Pa. 105.

*R. C. Dale*, on behalf of sundry distributees in estates now pending in the orphans' court, in which final judgment has been postponed until the determination of the question.

The legislature has thus divided the estates of decedents into two classes:

(1) Those having a distributive balance in personalty not exceeding $5,000. This class composes by far the larger portion of estates administered.

(2) Those having a distributive balance in personalty exceeding $5,000.

Upon the first class no tax is imposed. Upon the second class a tax of two per cent is imposed on that portion of the distributive balance which exceeds $5,000.

It is to be observed that the tax is not imposed upon each legacy, or distributive share, exceeding $5,000, but in gross upon the distributive balance exceeding $5,000, even though the sum coming to each distributee is less than $5,000.

Is this scheme of taxation within the constitutional powers of the legislature?

The constitutional provisions which must be considered are article 9, section 1: "All taxes shall be uniform upon the same class of subjects," etc., article 9, section 2: "All laws exempting property from taxation, other than the property above enumerated, shall be void," and article 3, section 7: "The general assembly shall not pass any local or special law . . . . changing the law of descent or succession."

How does the commonwealth reply to these provisions?

I. By the suggestion that the tax is not on property but on the right of succession, and by assuming that a tax imposed by the legislature upon property must be uniform, while there is no such requisite when the tax is upon the right of succession. When the cases are examined in which the distinction was drawn between a tax on property and a tax on the right of succession, it will be seen that this argument has no force. The occasion of the distinction was to afford an answer to the proposition which had been asserted against all inheritance or succession taxes, that such taxation was invalid as not uniform, in singling out the property of decedents passing under distribution and imposing a tax upon such property, while not taxing property generally in the hands of living owners.

In reply to this contention the courts pointed out that the tax was not on mere property as such, but on the succession—an excise tax on the passing of the property from the decedent to the distributees. This is clearly brought out in Strode v. Commonwealth, 52 Pa. 181, where the collateral inheritance tax was sustained as against the contention that the proceeds of untaxable United States government bonds passing to collateral kindred were free.

But, while the distinction between an ordinary property tax and a tax on property passing in succession may be made for the purpose of showing that property passing in succession is a class by itself, the assertion that the present tax is a succession tax does not absolve the legislature from regarding the constitutional principle of uniformity in respect to all property so passing.   The property of decedents passing to legatees or distributees either by will or through the intestate laws is a class by itself whether it be more or less than $5,000.   All property so passing, or the right of succession, is an independent and integral subject of taxation.   In taxing this subject-matter the constitutional requirement of uniformity must not be disregarded.

If the right exists to exempt estates of less amount than $5,000, and to tax all of more than that sum, the converse must be true, and a corrupt legislature might exempt the rich and tax only the poor.   The rule of equality is not only the rule of equity, but it is the rule of safety.

2. Before passing to the main discussion, it is also proper to clear from the case another claim which has been made in defense of unequal and progressive inheritance taxes.

In some of the cases, noticeably, United States v. Perkins, 163 U. S. 625, and Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283, there is some show of learning to establish that the right of inheritance is not a natural but purely a statutory right; and hence that the legislature at discretion may qualify and vary it, and in cases of large estates may ordain that such portion of an estate as the legislature may think expedient shall be harvested into the public treasury.

While we do not admit that such reasoning should be accepted by any American tribunal, it is certain that the legislature of Pennsylvania has no such arbitrary power.

Article 3, section 7 of the constitution, already quoted, provides: " The General Assembly shall not pass any local or special law . . . . changing the law of descent or succession."

Legislation which leaves the law unchanged as to estates of $5,000 and under, and permits 100 per cent of the distributive balance to go as heretofore to the persons named in the will, or by the intestate laws, and changes the law in respect to estates of over $5,000, providing that of the balance exceed-

ing $5,000, ninety-eight per cent shall go to the legatees and distributees, and the balance to the state, is a special law changing the rules of descent and succession.

But these suggestions are only made to clear away the rubbish which has been lugged into the discussion of this most important case.

The statute purports to be, what in fact it is, a taxing statute. It is so declared in its title, and in this respect its contents follow the title. As a taxing statute it must stand or fall, and the real question is, can the legislature divide a subject-matter for taxation into two classes, based upon no difference other than amount or value, and thus exempt the class of smaller value, although in fact much more numerous, and impose a tax upon the other class, limited in number of persons, who by reason of greater wealth are supposed to be less inconvenienced by the payment of the tax?

Before considering the novelty of this proposition when looked at in the light of general constitutional history and the theory of our government, it is proper to call attention to principles which have been firmly imbedded in the judicial history of Pennsylvania limiting and defining the power of the legislature to classify subjects upon which the constitution has provided that legislation shall be uniform.

Most of these decisions have arisen under the clauses of the constitution prohibiting special legislation. Since 1874, the legislature has made numerous efforts to nullify this constitutional requirement of uniformity. The method whereby it has been sought to evade the constitution is that of classification. Having thus classified, the next step is to legislate as to the classes.

While the power of reasonable classification is recognized, the strictness with which the court has reviewed such legislation is shown in the opinion of Mr. Justice DEAN, in Perkins v. Philadelphia, 156 Pa. 554.

It may be convenient to present to the court the leading cases in which the rules limiting the legislative power to classify them have been formulated.

The earliest case is Wheeler v. The City of Philadelphia, 77 Pa. 338. In this case it was held that a classification of municipal corporations as to matters of municipal government in accordance with population was rational, and hence was not

special legislation violating the constitutional requirement of uniformity.

This case is important because in it the principle of classification under the constitution of 1874 is first defined and placed upon a definite basis. The foundation upon which classes can be formed is shown to be an essential difference in the subject of classification. As the court said, the genus may be homo, but, without infringing the constitutional mandate, the human male may be placed in a different class from the human female. This illustrates the whole subject.

In Commonwealth v. Patton, 88. Pa. 258, the rule that the classification must rest upon a rational foundation was enforced.

In Scowden's Appeal, 96 Pa. 422, the decision was made upon the act of June 12, 1879, entitled "An act to provide for the holding of courts in certain cities of this commonwealth," providing that in all counties containing a population of not less than 60,000 inhabitants, and in which there is now or may hereafter be any incorporated city of the fifth class, it shall be the duty of the president judge, upon the application of the mayor and councils of such incorporated city, to make an order for the holding of one week of court or more, if necessary, in said city. The court held the act to be unconstitutional.

In Davis v. Clark, 106 Pa. 377, the court said: "Article III, section 7 of the Constitution declares 'the General Assembly shall not pass any local or special law authorizing the creation, extension, or impairing of liens.'"

In Morrison v. Bachert, 112 Pa. 322, it was held that the act of June 12, 1878, was unconstitutional as a local or special law in failing to establish a uniform rule throughout the state, and that the exclusion of two counties could not be sustained upon any rational theory of classification.

In Weinman v. Passenger Railroad Company, 118 Pa. 192, the question was whether a statute providing for the incorporation of street railway companies in cities of the third class was constitutional. The court held the statute invalid.

In Ruan Street, 132 Pa. 257, the limitations upon the doctrine of classification were very clearly stated with reference to an attempted road law applicable only to cities of the first class.

In Scranton v. Whyte, 148 Pa. 419, the act of May 23, 1889,

relating to municipal liens in cities of the third class was discussed, and the statute held to apply to a matter affecting municipal government and the classification was sustained as within the principle of Wheeler v. Philadelphia, 77 Pa. 338.

In Safe Deposit Co. v. Fricke, 152 Pa. 231, " the proposition was maintained that a classification of cities for purposes of legislation cannot be sustained unless the act relates to the exercise of a corporate power of such cities, or to the number, character, powers, and duties of a municipal officer thereof, or to some subject under the control of city government; hence it was held that the act of March 22, 1877, declaring that claims for overdue taxes and water rents in cities of the second class, filed in court, shall be liens on the real estate described therein, without regard to whether the owner is named therein or not, and that a judicial sale of such real estate shall pass a good title thereto in the purchaser, is unconstitutional and void, as a violation of the constitutional prohibition against legislation not uniform."

The opinion was delivered by Mr. Chief Justice STERRETT. In it he reviews the cases relating to the principles which warrant legislative classification.

In Philadelphia v. Westminster Cemetery Co., 162 Pa. 105, the act of June 8, 1891, prohibiting the location of cemeteries upon lands located within one mile from any city of the first class, the drainage from which empties or passes into any stream from which any portion of the water supply of such city is obtained was held unconstitutional as a special law not based upon any proper principle of classification.

In Chalfant v. Edwards, 173 Pa. 246, it was held that attemped legislation affecting the affairs of school districts and subschool districts in cities of the second class was a local and special law and repugnant to the constitution.

The cases in Pennsylvania have run along limited lines, so far as the facts are concerned, which were involved in the litigations. The opinions in all of the foregoing cases clearly show that the judgments were given upon no narrow ground, but, that the court stood upon the broad foundation of a constitutional principle to be applied to every case coming within its operation. The principle of these decisions has not been limited to our own state. It has been recognized and applied in the Federal courts and throughout the union.

In the recent case of Gulf, Colorado & Santa Fé Ry. Co. v. Ellis, 165 U. S. 150, the question was whether a statute of the state of Texas was constitutional, taxing a $50.00 counsel fee against railroad corporations unsuccessfully defending claims against them for cattle injured in the operation of their road. The statute was held invalid, the attempted classification being without reason in legal contemplation. The opinion of Mr. Justice BREWER contains an exhaustive review of authorities from many states, and also a clear definition of the limits of classification.

This view of the authorities shows that classification is only permissible when the general subject-matter of the legislation, as, for example, cities, may exist under such different conditions that in effect the subject, while nominally one, is in reality several. The basis of such classification is that things, though called by the same name, in substance may be different, and being different require distinct schemes of legislation.

A municipality which has become a metropolis with a teeming population is, in legislative contemplation, a different entity from a small city which has in fact the surroundings and life of a village or a rural town; hence, classification of cities into different classes has been recognized for the purpose of bringing into such separate classes communities having distinct municipal needs. The difference in substance and needs justifies classification for governmental purposes, but when the subject of legislation is one having no relation to the difference just noticed, but is a thing standing by itself, as the street passenger railway which was the subject of the legislation held unconstitutional in the Weinman case, then the court has pointed out that the mere incident of location in a city of one class rather than another is immaterial, and the rule of uniformity must stand.

Applying these principles, we are entitled to ask of the proponents of the new law, what is the reason underlying its proposed classification? Wherein is the difference of the right to receive a legacy from an estate where the distributive balance does not exceed $5,000 from the right to receive such legacy from an estate where the distributive balance does exceed that sum? In either case that which passes is money or money's worth.

We may admit that the court prima facie will assume the ex-istence of a good reason for every legislative act, and solve every reasonable doubt in favor of its validity when a rational attempt is made to classify for taxation.   But when the only basis of classification is the difference in the money value of an estate under $5,000 from an estate exceeding $5,000, we claim that by this mere statement the burden of proof is thrown upon the proponents of the statute to disclose a reason which will satisfy the judgment of the court.

How do the defenders of this law attempt to meet the bur-den?   By asserting that the legislature may discriminate be-tween those who they think can ill afford to pay the tax and those who, by reason of a more abundant inheritance, will feel the payment less or not at all.

To this argument it may be answered that it in nowise meets this case.   As already pointed out, the tax is not imposed on sums exceeding $5,000 passing to one legatee, but on the dis-tributive balance of the estate to be divided, it may be among twenty grandchildren.

A distributive balance of $4,500 passing to one son pays no tax.   A distributive balance of $6,000 to be divided into por-tions of $300 each among twenty grandchildren pays the tax. It would seem that the reason of greater ability to pay does not bear investigation in the light of this statute.

But passing this point, and assuming that this suggested rea-son did apply to the statute as drawn, and that the inheritance tax was one imposed on separate legacies of $5,000 or over pass-ing to one person, is the reason given one which can be upheld in an American court?   It is to be remembered that the ques-tion now under consideration is whether classification based simply upon the value of the property is such reasonable classi-fication as will support a tax law which seems to be in conflict with the constitutional requirement of uniformity.   We assert that such classification is not only without reason, but that the reason assigned is subversive of the fundamental principles of American equality before the law.   It divides the community into two classes, with the figure $5,000 as the line of demarka-tion.   To the one class it proclaims that they are too poor to be called upon to contribute their pro rata for the support of the

state; to the other it announces that they have more than enough, and it is proposed that they alone shall bear the burden.

In this discussion we are entitled to treat this question broadly, and to test the reason given for this classification by a general application. If taxation of inheritances on this basis of classification is lawful, all taxation may be imposed upon the same basis. The legislature may prescribe that only the excess over $5,000 upon the assessed valuation of the land of each individual landowner shall bear the burden of the land tax. Such a statute would exempt from taxation the larger proportion of the dwelling houses in this city, and relieve the burden now carried by the small farmers of the state. Such legislation may be commended upon economic grounds by academic theorists who have imbibed the teachings of foreign schools and know little of the principles of American liberty and American democracy.

But would taxation thus imposed be uniform upon the same subject-matter? Would it not be giving a legal sanction and definition to the word "classes" in the relation of the citizen to the state? Could any American thereafter boast that in this country there are no classes and no masses? Before sanction is given by this tribunal to such revolutionary doctrines, we ask a pause. It cannot be that in the first quarter of only the second century of our existence as a nation of freemen equal before the law, we are to have a statutory declaration enforced by judicial sanction that there is a class of the poor and a class of the rich with the sum of $5,000 the dividing line.

The class whom this legislation designates as the rich have no need to ask the court to repudiate this classification through any fear of the consequences upon their estates; neither need they entertain any doubt of their continued ability to make themselves prosperous in a community where, in legislature and courts, the population is divided into these classes—the great majority by law stigmatized as too poor to contribute to the maintenance of the state institutions, and the rich ennobled with the sole responsibility of supporting the government.

The history of the past justifies the suggestion that when any class has placed upon it the sole responsibility, it will quickly absorb the power, and the class willing to abnegate its share of the burdens of citizenship will quickly lose the manliness which has hitherto been the attribute of American freemen. Our enc-

mies could suggest no more certain method of destroying American democracy that it might be succeeded by an American plutocracy than that the state should recognize that its citizens in sharing their duties, burdens, responsibilities and powers are to be divided into two classes for the purpose of taxation, one composing the body of the people exempt by reason of supposed inability to contribute, the other, by reason of wealth, to bear all the burden.

This, we submit, is a fair statement of the case. The classification proposed is unreasonable; it is against common right and the fundamental principles of democratic self-government. What might be the power of a court to protect against such ill-boding legislation in the absence of a constitution it is not necessary here to discuss. This Court is armed with the power of the constitution. The letter and spirit of the constitution are against the statute. Its proponents seek to uphold it upon the doctrine of classification, but in this they must fail, for the classification is based on no principal or foundation which this Court can recognize.

If our written constitution, with its clear and definite prohibitions, is ineffective to insure the equality of citizens before the law in the fundamental matter of taxation, we may fear that written constitutions are a snare, serving by fair promises to dull "the eternal vigilance which is the price of liberty!" Under the constitutional government of England, the principles of liberty have been maintained through centuries without the protection of written articles; but the principles of liberty and right were perpetuated in the national heart, and he who disregarded them, were he king or minister, did so at the risk of his head.

Of course, this was a turbulent method of maintaining free government, and the fathers of our nation hoped by the framing of constitutions and conferring upon the judiciary the power to enforce constitutional mandates and prohibitions to relieve the body politic from the struggles through which alone in the older nations liberty had survived.

The judiciary has done this work for more than a century, but never has it been called upon to determine a more important question than that involved in this case.

As this Court now decides, so it will be. Are all citizens of

this free state of Pennsylvania equal before the law; equally bound and with an equal right in proportion to their means to maintain the state and its institutions; equally entitled to exercise the powers and enjoy the privileges and honors of freemen; or are we to be two classes, one the poor—degraded by statute and judicial sanction from independent, responsible citizenship, and only permitted to exercise the right of suffrage in forma pauperis; the other the rich—limited in numbers, but elevated by law above their fellows because charged with the responsibility of supporting the state?

A discrimination sanctioned in the matter of descent and succession will only be the forerunner of others, and the invidious distinction between those more or less well to do will be accepted as a basis of all legislation; and instead of a commonwealth of freemen, having common rights and common duties, we shall have class arrayed against class, and each seeking to shift to the other the burdens and duties which should be carried by their united strength.  I am no augur of evil, but if our people are to be thus divided, some juvenal of the twentieth century will have occasion to satirize the follies and vices of the populace of a decadent state,—demoralized and degraded by more insiduous and injurious influences than panem et circences.

> "—Sed quid
> Turba Remi?"  "Sequitur Fortunam, ut semper, et odit
> Damnatos; idem populus, si Nursia Tusco
> Favisset, si oppressa foret secura senectus
> Principis, hac ipsa Sejanum diceret hora
> Augustum; jam pridem, ex quo suffragia nulli
> Vendimus, effundit curas; nam qui dabat olim
> Imperium, fasces, legiones, omnia, nunc se
> Continet, atque duas tantum res anxius optat,
> Panem et Circences."  "Perituros audio multos," &c., &c.
>
> *Juvenal—Satire X.*

These considerations are not outside the purview of an American court in dealing with such a question, and it is with peculiar satisfaction that we call the attention of the court to the opinion filed by Mr. Justice Field upon the first hearing of the income tax case, 157 U. S. 586.  The contention was made that the tax law was invalid because of disregard of the provision in the federal constitution requiring uniformity in federal taxation.  The income tax law taxed so much of the income as ex-

ceeded $4,000.   The defenders of the law sought to uphold it upon the ground of legislative classification.   In the final judgment of the Court the determination of this question became unnecessary because the entire law was held invalid as a " direct " tax.   The opinion of Mr. Justice FIELD is a monument to his learning and power of clear and persuasive statement.

It may aid the investigation of the Court to refer to the leading decisions outside Pennsylvania: State v. Ferris, 53 Ohio, 314; State v. Mann, 76 Wis. 469; Curry v. Spencer, 61 N. H. 624; State v. Hamlin, 86 Me. 495; Gelsthorpe v. Furnell, 51 Pac. Rep. 267 ; In re House Bill No. 122, Supreme Court of Colorado, March 15, 1897, 48 Pac. Rep. 535; Minot v. Winthrop, 162 Mass. 113; State v. Switzler, 143 Mo. 287.

Our case may be summarized as follows :

1. The constitution prescribes uniformity of taxation upon the same class of subjects.

2. The legislature has a wide discretion in defining what are classes.   The mere fact that things bear the same name does not prevent the legislature from classifying where such classification is necessary to group into appropriate classes things of the same name but differing essentially in substance.

3. Where the only basis of classification is a difference in money value, that is not classification within the meaning of the true rule.

4. This Court has laid down the rule for which we contend in many cases, and to sustain the position of the commonwealth would be to disregard all the precedents.

5. The rule adopted by this Court is also in harmony with the weight of authority in the other states of the Union.   The recent decision of the Supreme Court of the United States has no bearing, as that case involved only a construction of the fourteenth amendment to the federal constitution.

6. The argument of the learned attorney general that the statute may be read by eliminating the proviso containing the exemption and treating that the inheritance tax should be imposed upon all estates without exception is without support in principle or by any adjudicated case except the ill-considered doctrine in Fox's Appeal.

7. The act must be declared null and void, as violating the express letter of the constitution and the fundamental principle of equality before the law.

OPINION BY MR. CHIEF JUSTICE STERRETT, April 24, 1899:

This appeal challenges the validity of the decree of the court below, in which the Act of May 12, 1897, P. L. 56, entitled " An act taxing gifts, legacies and inheritances in certain cases and providing for the collection thereof," was adjudged unconstitutional and void.

Section one of the act declares: "That from and after the passage of this act all personal property of whatsoever kind and nature which shall pass by will, or by the intestate law of this state, from any person who may be seized or possessed of the same . . . . shall be and the same is hereby made subject to a tax of two dollars on every one hundred dollars of the clear value of such personal property, after deducting the debts of the decedent and costs of administration, . . . . to be paid for the use of the commonwealth; and all heirs, legatees, devisees, administrators, executors and trustees shall only be discharged from liability for the amount of such taxes, . . . . by paying the same for the use aforesaid as hereinafter directed: Provided, That personal property to the amount of five thousand dollars shall be exempt from the payment of this tax in all estates :

" And provided further, That so much of the estates of persons heretofore deceased as has not been actually distributed and paid to persons entitled thereto prior to the passage of this act shall be liable to the tax imposed by this law, as well as the estates of persons who die hereafter."

The last quoted proviso appears to have been added by way of amendment to the first section of the bill while it was under consideration, with the view of so enlarging (by improper use of a proviso) the scope of that section as to bring within its operation undistributed portions of all estates of persons theretofore deceased.   Inasmuch as the testator, in the case now under consideration, died September 5, 1897—nearly five months after the passage of the act above cited—the retroactive provision of said proviso is not involved and requires no further notice in this case.   In other cases, however, which have been argued the commonwealth's claims are based upon the retroactive operation of said proviso.   In disposing of them, it may not be amiss to consider the retroactive effect of the proviso.

The manifest effect of the first above quoted proviso is to

effectually exclude from the operation of the taxing provisions of the act "personal property to the amount of five thousand dollars . . . . in all estates." To that extent, the operation of the act is restricted and qualified.

It is further restricted and qualified by section sixteen, which provides : " This act shall be known as the Direct Inheritance Tax Law, and shall not be held to change, modify or alter the existing law in reference to the collection of collateral inheritance taxes, it being the intention of this act to impose a direct inheritance tax on all estates or parts of estates not subject to the act or acts providing for the collection of collateral inheritance taxes."

The intervening sections, two to fifteen, inclusive, are devoted to what may be called the administrative provisions of the act. The second declares : " If the said tax shall be paid within three months after the death of the decedent, a discount of five per cent shall be made and allowed, and if the said tax is not paid at the end of one year from the death of the decedent, interest at the rate of six per centum per annum shall be charged, for such year, and after the expiration of one year from the death of the decedent, interest shall be charged at the rate of twelve per centum per annum on such tax," etc.

The proviso to section five declares : " That all taxes imposed by this act shall be a lien upon the personal property of the estate on which the tax is imposed, or upon the proceeds arising from the sale of such property from the time the said tax is due and payable, and shall continue a lien until said tax is paid and receipted for by the proper officer of the commonwealth."

As defined and limited by the act itself, the tax sought to be charged and collected under its provisions is imposed, in express terms on " all personal property of whatsoever kind and nature which shall (thereafter) pass by will, or by the intestate laws of this state," from the respective owners thereof upon their decease, and upon all property, of the same kind, which had theretofore passed, in the same manner, from the owners thereof and was not " actually distributed and paid to the persons entitled thereto prior to the passage of this act ; " but exempting, however, from said tax, " in all estates," personal property to the amount of $5,000, and excepting from the operation of the act all personal property that is " subject to the act

or acts providing for the collection of collateral inheritance taxes."

As already stated, Marmaduke C. Cope, the testator in this case, died nearly five months after the passage of the act, and in due course his executor's account was filed and confirmed showing $917,519.88, net balance of personal property for distribution. The learned auditing judge of the court below rejected the commonwealth's claim on the fund for state tax, under the provisions of the so-called "Direct Inheritance Tax Law" in question, on the ground that in Blight's Estate, 6 Dist. Rep. 459, Portuondo's Estate, 6 Dist. Rep. 462, and other cases involving the same question, the said court had theretofore declared the said law unconstitutional and void. Exceptions to said adjudication having been filed by the commonwealth, the same were duly considered and dismissed by the court in banc which, in an opinion by its learned president, confirmed the adjudication and decreed distribution accordingly. Hence this appeal by the commonwealth.

Substantially, the only question involved in the five specifications of error is this : Did the learned court below err in deciding that the act in question is unconstitutional? In our opinion it did not.

As to the character of the act, there cannot be any doubt. That it is an act imposing taxes on the personal property therein specified is too plain for discussion. To hold otherwise would be a perversion of the plain meaning of the words employed in entitling the act and specifying its provisions. As we have seen its title declares it to be, "An act taxing gifts, legacies," etc., and providing for the collection thereof. Section sixteen declares that it shall be "known as the Direct Inheritance Tax Law." The "personal property" specified in the act is, in express words, "made subject to the tax," etc.: section 1. The second proviso to that section expressly declares "that so much of the estates of persons heretofore deceased as has not been actually distributed and paid to persons entitled thereto prior to the passage of this act shall be liable to the tax imposed by this law, as well as the estates of persons who die hereafter." Section five declares : "All taxes imposed by this act shall be a lien upon the personal property of the estate on which the tax is imposed, or upon the proceeds arising from the sale of

such property," etc. It is also an act exempting "from the payment of this tax, in all estates," personal property specified therein to the amount of $5,000.

The act in question has none of the features of an intestate law, or of an act regulating the disposition of property by will or by instruments in the nature thereof. On the contrary, upon its face and in all its provisions it is manifestly a tax law, clearly and distinctly predicated of the actual existence and general operation of an intestate law and a will's act, under the operation of one or other of which the personal property intended by its provisions to be subjected to taxation would pass from the then, as well as subsequent, owners thereof to others, or had theretofore passed and become vested in others prior to the date of the act under consideration.

Having thus seen that the act in question is essentially and avowedly a "tax law," imposing a state tax on certain specified personal property, and providing for the collection thereof, let us briefly inquire whether it offends against the fundamental principles of taxation, or the provisions of our constitution relating thereto. If it does, our manifest duty is to support and defend the latter by declaring the act unconstitutional : Perkins v. Philadelphia, 156 Pa. 554. In that case it was well said, inter alia, by our Brother DEAN : "Every department of the government is bound by its (the constitution's) provisions, but especially is this Court, for on it is the duty of judicially determining any violation of it."

It is of the very essence of taxation that it should be relatively equal and uniform, and where the burden is common there should be a common contribution to discharge it : Cooley's Constitutional Limitations, * 495. In his Treatise on Taxation (2d ed.), pp. 2, 3, the same learned author says : "In an exercise of the power to tax, the purpose always is that a common burden shall be sustained by common contributions, regulated by some fixed general rule and apportioned by the law according to some uniform ratio of equality. The power is not, therefore, arbitrary, but rests on fixed principles of justice which have for their object the protection of the taxpayer against exceptional and invidious exactions, and is to have effect through established rules operating impartially."

" Equality in the imposition of the burden is of the very es-

sence of the right, and though absolute equality and absolute justice may not be attainable, the adoption of some rule, tending to that end is indispensable. Equality as far as practicable and security of property against irresponsible power are principles which underlie the power of taxation as declared ends and principles of fundamental laws : " Desty on Taxation, 29, and cases there cited.

As was well said by Mr. Justice Brewer in his dissenting opinion in Magoun v. The Illinois Trust and Savings Bank, 170 U. S. 283, 301, " Equality in right, in protection and in burden is the thought which has run through the life of this Nation and its constitutional enactments from the Declaration of Independence to the present hour. Of course, absolute equality is not attainable, and the fact that a law, whether tax law or other, works inequality in its actual operation does not prove its unconstitutionality (Merchants' Bank v. Pennsylvania, 167 U. S. 461). But where a tax law directly, necessarily and intentionally creates an inequality of burden, it then becomes imperative to inquire whether this inequality, thus intentionally created, can find any constitutional justification."

Further citation of authorities in support of these fundamental principles is unnecessary. In nearly every state in the union they are more or less carefully guarded against specific transgressions by constitutional restrictions and limitations.

Our constitution (article 9, secs. 1 and 2) declares: " All taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying the tax ; but the General Assembly may, by general laws, exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, and institutions of purely public charity.

" All laws exempting property from taxation, other than the property above enumerated, shall be void."

The language of section 1, as to what the rule of uniformity shall embrace, is as broad and comprehensive as it could possibly have been made. The words, " all taxes," must necessarily be construed to include property tax, inheritance tax, succession tax and all other kinds of tax the subjects of which are susceptible of just and proper classification. By necessary implication, the first clause of that section recognizes the authority of the

legislature to justly and fairly, but never arbitrarily, classify those subjects of taxation with the view of effecting relative equality of burdens.  A pretended classification that is based solely on a difference in quantity of precisely the same kind of property is necessarily unjust, arbitrary and illegal.  For example, a division of personal property into three classes with the view of imposing a different tax rate on each,—class 1, consisting of personal property exceeding in value the sum of one hundred thousand dollars ($100,000), class 2, consisting of personal property exceeding in value twenty thousand dollars ($20,000) and not exceeding one hundred thousand dollars ($100,000), and class 3, consisting of personal property not exceeding in value twenty thousand dollars ($20,000)—would be so manifestly arbitrary and illegal that no one would attempt to justify it.

The next clause of section 1, expressly authorizes the legislature to exempt from taxation four specified classes or kinds of property.  This specific delegation of authority to exempt impliedly prohibits express exemption from taxation of any other property, but to place this matter beyond the reach of doubt, it is expressly ordained in section 2, that "all laws exempting property from taxation other than the property above enumerated shall be void."

These limitations on the power of the legislature mean something.  They are plainly intended to secure, as far as possible, uniformity and relative equality of taxation, by prohibiting generally the exemption of a certain part of any recognized class of property, and subjecting the residue to a tax that should be borne uniformly by the entire class, and by guarding against any other device that necessarily or intentionally infringes on the established rules of uniformity and relative equality which, as we have seen, underlie every just system of taxation.  In any view that can reasonably be taken of these limitations, it must be manifest to any reflecting mind that the act in question offends against them by undertaking to wholly exempt from taxation the personal property of a very large percentage of decedents' estates, and impose increased and unequal burdens on the residue of the same class of property.

If the authority to exempt, etc., which was assumed and exercised by the legislature in this case, is sanctioned by this

Court, the constitutional rule of uniformity virtually becomes a dead letter, and in lieu of the will of the people, as plainly declared in the fundamental law of the state, the unrestrained will of the legislature becomes the supreme law on that ..bject. If the legislature had authority under the consti union to do what was done in this case, they had like authority to reverse their order of taxation, etc., and thus impose the tax on personal property amounting in value to $5,000 and less, and exempt therefrom all property of same recognized class in excess of that sum; and, consequently, they have like authority, in every case, to establish any other arbitrary ratio between the amount in value of property to be taxed and that which shall be exempt therefrom, in any class of subjects.

The commonwealth's contention is that the "two dollars on every one hundred dollars of the clear value of such personal property" in excess of $5,000, is not a tax according to the true intent and meaning of article 9, sections 1 and 2 of the constitution above quoted; that independently of the taxing power, the legislature was fully empowered to pass the act in question, and hence it is not within the inhibition of section 9 of the constitution; that in the language of Dos Passos on Inheritance Tax (2d ed.), chap. 2, sec. 8, "Such taxes are nothing more than a burden, bonus, excise or assessment, as they have been variously defined, imposed by the government upon the passing, devolution, transmission or privilege of taking or receiving property under wills and intestate laws, whether such property passes to collateral or lineal heirs."

These propositions are predicated of the assumed principle that the right to inherit or succeed to property is not a natural but merely a civil right (1 Sharswood's Blackstone, 398 and 399), and hence the commonwealth, acting through its law-making power, may assert its sovereign right to take and appropriate to its own use such portion or portions of the estates— real, personal and mixed—of every decedent as the legislature, in its wisdom, may consider necessary and proper. They also assume that the people of this state, in their fundamental law, have placed no restriction on legislative power in that regard.

Without pausing to consider the soundness as well as the scope of the principle thus broadly asserted, but conceding for argument's sake merely, that the legislature has the power under

our constitution to so change the law of descent and succession as to give the commonwealth a certain portion of every decedent's estate, or to otherwise regulate the transmission or devolution of such estates, it does not by any means follow that the "direct inheritance tax law," under consideration is such an act.   As we have seen, the act does not profess to be a supplement to or an amendment of our laws relating to the estates of testates or intestates, but quite the reverse.   There is nothing in its title or its text to indicate anything else than that it was intended to be a tax law imposing a tax of two per centum on the personal property of decedents therein specified within the scope of article 9 of the constitution; but assuming, for argument's sake only, that it is otherwise,—that it was in fact intended to be an act supplementary or amendatory of existing laws regulating the succession to estates of decedents, we think it clearly offends against that clause of article 3, section 7 of the constitution, which declares : " The General Assembly shall not pass any local or special law  .  .  .  . changing the law of descent or succession."

As our laws of descent and succession stood prior to the passage of the "Direct Inheritance Tax Law," the personal property specified in said act was never subject to any " burden, bonus, excise or assessment " whatever.   The pre-existing law of succession is changed by that act, in that it imposes a burden on so much of said property as is in excess of $5,000, and leaves it unchanged as to the residue.   It is therefore a special and not a general act, because it does thus impose a burden on a part of said property, and declares that, in all estates, personal property, not exceeding $5,000 in value, shall be exempt from said burden.   It thus changes the law of succession as to part of the property specified therein, and attaches a condition to the right of succession which is neither general nor uniform, in that the burden is not imposed upon all distributees or all estates of decedents, but only upon a portion of them arbitrarily selected, while others in precisely the same class are exempted therefrom. As to classification, it is very clear that $5,000 in value of the personal property specified in the act is precisely the same in kind as $50,000 (or any other sum) in value of said property. The money value of any given kind of property, such as that specified in the act can never be made a legal basis of subdivi-

sion or classification for the purpose of imposing unequal burdens on either of such classes, or wholly exempting either of them from any burden. On the commonwealth's own assumption, therefore, the act is a special law, changing the law of succession, and is clearly forbidden by article 3, section 7 of the constitution.

In the absence of reliable data, the practical operation of the $5,000 exemption proviso cannot be definitely stated, but it would perhaps be safe to say that, outside of the large centers of population, from ninety to ninety-five per cent of the estates of decedents, administered by the orphans' court from year to year, do not separately represent personal property exceeding in value the sum of $5,000; so that probably not more than from five to ten per cent of said estates, therein administered, are subject to the two per cent direct inheritance tax. Whatever the percentage of such estates may be, — whether more or less than five to ten per centum, — it conclusively shows the special character of the act in question. It also illustrates the injustice and inequality that must result from such special legislation. If the exempted personal property were subjected to the same tax rate that is required to be paid on personal property in excess of $5,000, it would yield to the commonwealth an average of about $50.00 on each decedent's estate,—a sum that is by no means insignificant when the aggregate number of such estates is taken into consideration.

Appellant's suggestion, that we have a precedent for exemption in the proviso to our collateral inheritance tax law, has no force when we recall the fact that said proviso was enacted in 1826 (P. L. 227), long before the adoption of our present constitution containing the limitations on the powers of the legislature, which we have been considering. No such limitations existed in 1826 when the proviso to our collateral inheritance tax law was enacted, and of course it was a valid enactment which has never been repealed or modified.

There are other points of minor importance to which reference might be made, but enough has been said to show that in any view that can be reasonably taken of the act in question it is unconstitutional and void.

Decree affirmed and appeal dismissed at appellant's costs.