## Graduated Income Tax

KEITEL, Deputy Attorney General, July 2, 1953.—
We have your request to advise you whether we can
draft an act imposing a State tax at a fixed percentage
upon the Federal income tax liability of persons who
are residents of this Commonwealth which would be
constitutional. It is our opinion that any act attempt-
ing to impose such a tax would be unconstitutional.

Article IX of the Constitution of Pennsylvania re-
lating to "Taxation and Finance" provides in sections
1 and 2 as follows:

"Section 1. *Taxes to be uniform; exemptions.* All
taxes shall be uniform, upon the same class of subjects,
within the territorial limits of the authority levying
the tax, and shall be levied and collected under gen-
eral laws; but the General Assembly may, by general
laws, exempt from taxation public property used for
public purposes, actual places of religious worship,
places of burial not used or held for private or cor-
porate profit, institutions of purely public charity, and
real and personal property owned, occupied, and used
by any branch, post, or camp of honorably discharged
soldiers, sailors, and marines.

"Section 2. *Exemption from taxation limited.* All
laws exempting property from taxation, other than
the property above enumerated shall be void."

To be constitutional, the proposed tax would have
to satisfy the uniformity requirements quoted above
as interpreted by the Supreme Court of Pennsylvania.

The Federal income tax liability of individuals is
determined not only by the gross income, with certain
adjustments, but also by deductions, exemptions, and
a graduated rate of tax applicable to various brackets.
For example, in 1952 a person having an income of

$3,000 would by using the short form pay a Federal tax of either $474, $338, $205, $72 or 0, depending upon whether he had 1, 2, 3, 4 or 5 exemptions respectively. The application of a fixed percentage against these five varying amounts of Federal tax liability for the same income would result in five different tax payments to Pennsylvania under the proposed bill. Such variations and many others which might be cited create a manifest lack of uniformity which the court decisions strongly corroborate.

In Kelley et al. v. Kalodner et al., 320 Pa. 180 (1935), the Supreme Court of Pennsylvania considered the constitutionality of the Act of July 12, 1935, P. L. 970, which imposed a graduated income tax for school purposes on residents of Pennsylvania and on certain income of nonresidents. The statute provided a comprehensive system for the levy and collection of an annual income tax. Numerous exemptions were permitted by the act for the computation of "gross income" as well as deductions for the determination of "net income". Taxpayers were allowed a deduction for living expenses in the amount of $1,000 in the case of a single person and $1,500 for the head of a family or a married person. In addition, a deduction of $400 was authorized for each dependent under 18 years of age. The tax was imposed at rates varying from two percent to eight percent.

In considering the exemption provisions, the court said (p. 188) :

". . . There can be no doubt that these exemptions were inserted for the purpose of putting the burden of the tax upon those most able to bear it, but it results in taxing those whose incomes arise above a stated figure merely because the legislature believes their incomes are sufficiently great to be taxed. *It is obvious that the application of the tax is not uniform. . . .*" (Italics supplied.)

As to the graduated rates of taxation, the court further said (p. 189):

"*Moreover, the tax is in violation of the uniformity clause in its application to the persons whose incomes fall within the various brackets designated in the act.* We have previously ruled that a tax which is imposed at different rates upon the same kind of property, solely on the basis of the quantity involved, offends the uniformity clause. . . . [citing Cope's Estate, 191 Pa. 1, 22 (1899)]" (Italics supplied.)

The court also decided that a tax on income from real estate or securities was a property tax subject to the constitutional requirement of uniformity. The court subsequently held that an excise tax was likewise subject to the requirements of article IX, sec. 1, of the Pennsylvania Constitution. In American Stores Company v. Boardman, Secretary of Revenue, 336 Pa. 36, 40, 41 (1939), in discussing a State tax on chain stores, the court said:

". . . However, it requires but a glance at its provisions to see that the act now before us for consideration is capable of but one interpretation and that is that *it is a plain and palpable attempt at graduated taxation which obviously violates the provisions of our constitution.* . . .

"This court has long held and it is now well established in this Commonwealth that a progressively graduated tax is lacking in uniformity and violates article IX, section 1, of our Constitution. From Banger's Appeal, 109 Pa. 79 (1885)—the first instance such a tax came before this court for consideration after the adoption of our present Constitution—down to Butcher v. Philadelphia, 333 Pa. 497 (1938), *we have consistently and unalterably held that a graded tax cannot be sustained.* . . ." (Italics supplied.)

The tax now being proposed on Federal income tax

liability would be "a plain and palpable attempt at graduated taxation" which would obviously violate the provisions of our Constitution. It would be an attempt to do indirectly what cannot be done directly, i.e., incorporate into the laws of Pennsylvania the progressively graduated tax system of the Federal Government, with its deductions, exemptions and variations. Such a tax could not be sustained even though the proceeds were earmarked for public schools: Kelley v. Kalodner, supra.

Not only would the proposed tax be invalid as lacking uniformity, but it would also be an unconstitutional delegation of legislative authority.

The amount of revenue received by Pennsylvania under such a tax would be subject to all changes in rates, deductions and exemptions enacted by Congress or effected by administrative action or judicial interpretation. By reducing Federal taxes in the middle of a Pennsylvania biennium Congress could unbalance the budget of Pennsylvania. The Pennsylvania General Assembly would thus be delegating to the Federal Government one of its most important functions.

In Commonwealth v. Warner Bros. Theatres, Inc., 345 Pa. 270 (1942), the constitutionality of the corporate net income tax was attacked on the ground that it had been an unlawful delegation of legislative power, because the tax was based upon net income as returned to and ascertained by the Federal Government. In rejecting appellant's argument as to unlawful delegation, the court said (p. 272):

". . . Net income as ascertained is the base upon which the tax is measured, *not the tax itself.*

". . . If the legislature had the constitutional right to levy a graduated income tax and *should provide that it should be the same as fixed from time to time by the Federal Government,* then we would have a situation such as appellant contends against. . . .

That case [Holgate Bros. Co. v. Bashore, 331 Pa. 255] would be an analogue, if an income tax statute had been passed, similar to such as the Federal Legislature might enact, which, as before pointed out, is not the case. . . ." (Italics supplied.)

From these comments, it is clearly inferable that the court would hold the proposed act unconstitutional as an invalid delegation of legislative power. The Federal "tax itself" would be the base which would be "the same as fixed from time to time by the Federal Government".

We have examined the cases of Feathertsone v. Norman, 170 Ga. 370, 153 S. E. 58 (1930), and Santee Mills v. Query, 122 S. C. 158, 115 S. E. 202 (1922), which have been cited in support of the constitutionality of the proposed tax. However, neither of these decisions can modify the construction which has been placed upon the Pennsylvania Constitution.

In the Georgia case, the legislature had adopted "an income tax similar to that of the United States, but at the rate and according to the scale hereinafter set forth". A study of this decision indicates that the Georgia statute adopted the Federal tax act as its own, and thus avoided an unconstitutional delegation of authority to Congress.

In the South Carolina case, the court upheld a statute imposing an income tax equal to one third of the Federal income tax for which the taxpayer was liable. Nevertheless, it should be noted that the Constitution of South Carolina permitted a graduated income tax. Since the Constitution of Pennsylvania has been so construed as to prohibit any graduated income tax, the decisions of the Georgia and South Carolina courts could not be regarded as apropos here.

Similarly, if the base of the tax were frozen so as to preclude subsequent alterations thereof by the Federal Government, as, for example, by adopting the

taxpayer's Federal tax liability for 1952 as the base for the Pennsylvania tax during 1953 and 1954, a further question might arise under the due process and equal protection clauses of the fourteenth amendment to the Constitution of the United States, since the base would bear no relation to the income being taxed during those years. A comprehensive Pennsylvania statute might be drafted so as to expressly copy and enact as its own the voluminous Federal income tax laws and regulations in effect in 1952, but no conceivable plan of that nature, however intricate, could satisfy the uniformity requirements of the Pennsylvania Constitution.

Accordingly, you are advised that an act imposing a tax upon the Federal income tax liability of persons who are residents of this Commonwealth cannot be drafted in a form that would be constitutional.