# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nextel Communications of the      :
Mid-Atlantic, Inc.,      :
              Petitioner      :
                           :
          v.                :   No. 98 F.R. 2012
                           :   Argued:  September 16, 2015
Commonwealth of Pennsylvania,      :
              Respondent      :


BEFORE:  HONORABLE DAN PELLEGRINI, President Judge
               HONORABLE BERNARD L. McGINLEY, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE MARY HANNAH LEAVITT, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE ANNE E. COVEY, Judge


**OPINION BY JUDGE BROBSON**       **FILED:  November 23, 2015**


In this appeal from the Board of Finance and Revenue (Board), Petitioner Nextel Communications of the Mid-Atlantic, Inc. (Nextel) challenges the Board's denial of its petition for refund of corporate net income (CNI) tax paid to the Commonwealth of Pennsylvania for the tax year ending December 31, 2007 (2007 Tax Year).  In pursuing its refund, Nextel contends that the net loss carryover deduction (NLC deduction) provision in Section 401(3)4.(c)(1)(A)(II) of the Tax Reform Code of 1971 (Tax Reform Code),[1] as applied to Nextel,[2] violates

---

[1] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7401(3)4.(c)(1)(A)(II).

[2] Nextel does not here press a facial constitutional challenge to the corporate net income tax or to the NLC deduction.

the uniformity requirement (Article VIII, Section 1) of the Pennsylvania Constitution (Uniformity Clause). For the reasons set forth below, we find in favor of Nextel, reverse the Board's Order, and grant relief to Nextel.

The NLC deduction provision of the Tax Reform Code allows a taxpayer to reduce its positive taxable income in a particular tax year by deducting prior year net losses (*i.e.*, where the taxpayer had negative taxable income in a prior year), thereby reducing the amount of CNI tax due and payable in that tax year. Net losses from prior tax years may be carried over to subsequent tax years and applied to reduce taxable income according to a schedule set forth in Section 401(3)4.(c)(2) of the Tax Reform Code, 72 P.S. § 7401(3)4.(c)(2). For example, a net loss in taxable years 1995 through 1997 may be carried over for ten taxable years. A net loss in taxable years 1998 and thereafter may be carried over for twenty taxable years. In addition to limiting how long a taxpayer may carry over its net losses, the Tax Reform Code also limits the amount of the NLC deduction that a taxpayer may take in any given tax year. For the 2007 Tax Year, the amount of the NLC deduction was limited to *the greater of* 12.5% of the taxpayer's taxable income or $3 million. Section 401(3)4.(c)(1)(A)(II) of the Tax Reform Code.

Nextel is a telecommunications company that does business in multiple states, including Pennsylvania. Our inquiry is confined to Nextel's income and losses relating to its Pennsylvania business. According to the parties' Stipulation of Facts, Nextel carried over net losses of $150 million into the 2007

2

Tax Year.[3]   Nextel earned $45 million of taxable income during the 2007 Tax Year.  Accordingly, Nextel's available net loss carryover in 2007 well exceeded its 2007 taxable income.  Consistent with the NLC deduction provision of the Tax Reform Code that limits the amount of the NLC deduction that a taxpayer may take in the 2007 Tax Year, Nextel reported for the 2007 Tax Year its full $45 million in taxable income to the Commonwealth, but it took only a $5.6 million NLC deduction (the greater of 12.5% of its taxable income or $3 million).  As a result, Nextel reduced its taxable income for the 2007 Tax Year to $39.4 million and paid CNI tax of $4 million on that amount.[4]

Nextel filed a timely petition for refund of CNI tax paid in the 2007 Tax Year, in which it argued, *inter alia*, that the NLC deduction cap of the greater of 12.5% of taxable income or $3 million was unconstitutional.  The Department of Revenue Board of Appeals (Revenue) and the Board held that they lacked the authority to consider and rule on Nextel's constitutional challenge.  They both concluded that Nextel properly applied the NLC deduction provision as written when it filed its tax report and paid its taxes for the 2007 Tax Year.  Accordingly, Revenue denied Nextel's request for a refund, and the Board affirmed.

The Uniformity Clause provides:  "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax . . . ."  Nextel contends that the limitations on the NLC deduction favor businesses with taxable income of $3 million or less.  Assuming these taxpayers

---

[3] The figures set forth herein are rounded in the interest of presentation.  The actual figures are set forth in the parties' Stipulation of Facts.

[4] The statutory CNI tax annual rate is 9.99%.  Section 402(b) of the Tax Reform Code, *as amended*, 72 P.S. § 7402(b).

have a net loss carryover in excess of their taxable income in a particular year—*i.e.*, a positive net loss carryover position—these taxpayers can reduce their taxable income to $0. By contrast, any taxpayer that has taxable income in excess of $3 million in a tax year, who is also in a positive net loss carryover position, is precluded from reducing its taxable income to $0. That taxpayer will always have to pay CNI tax, even if its net loss carryover exceeds its taxable income that year.

According to Nextel and the parties' Stipulation of Facts,[5] this actually occurred in 2007. In the 2007 Tax Year, 19,537 taxpayers subject to the CNI tax were in a positive net loss carryover position—*i.e.*, the amount of their net loss carryovers exceeded the amount of taxable income apportioned to Pennsylvania for the 2007 Tax Year. Of those 19,537 taxpayers, 19,303 (98.8%) were able to completely offset their taxable income through the NLC deduction provision. These particular taxpayers had taxable income at or below $3 million. Because the 2007 Tax Year NLC deduction was limited to *the greater of* 12.5% of taxable income or $3 million, these taxpayers, using the $3 million cap, were able to avoid paying any CNI tax for the 2007 Tax Year.

The other 1.2%, or 234 taxpayers, in a positive net loss carryover position in the 2007 Tax Year, paid some CNI tax that tax year. They had taxable income in excess of $3 million. Indeed, the majority of the 234 taxpayers had taxable income in excess of $6 million. Because of the limitations placed on the NLC deduction that year, these taxpayers could not reduce their taxable income to $0. A taxpayer in a positive net loss carryover position in 2007 with $3,000,001 in taxable income in the 2007 Tax Year would have paid $0.10 in CNI tax. But a

---

[5] Stipulation of Facts Ex. D.

similarly-situated taxpayer in the 2007 Tax Year with one dollar less in taxable income would have owed no CNI tax under the NLC deduction provision. For taxpayers with substantially more taxable income in the 2007 Tax Year, the tax consequences were more severe. Nextel was among twenty-six taxpayers whose taxable income in 2007 exceeded $24 million. At most, these taxpayers could only reduce their taxable income by 12.5% under the NLC deduction limitations.

Nextel maintains that this disparate treatment of taxpayers, based solely on the size of the business in terms of taxable income in the 2007 Tax Year, violates the Uniformity Clause. In Nextel's view, the NLC deduction limitations work in favor of small taxpayers in a positive net loss carryover position and against similarly-situated larger taxpayers. The larger the taxpayer (*i.e.*, the greater the income), the more disparate the impact. Accordingly, Nextel argues that the NLC deduction limitations create an unconstitutional progressive CNI tax structure, where small taxpayers pay a lower effective tax rate than larger, similarly-situated, taxpayers, even though the statutory rate is fixed at 9.99%.[6]

In response, the Commonwealth contends that there is no Uniformity Clause violation, because the same statutory rate of 9.99% is applied to the same base in every case (taxable income less NLC deduction). Similarly, because the same statutory rate is applied against the same tax base for every taxpayer, the Commonwealth argues that we must reject Nextel's characterization of the CNI tax as unconstitutionally progressive. The Commonwealth also argues that we must reject Nextel's contention that the Uniformity Clause demands that all taxpayers

---

[6] The Pennsylvania Business Council has filed an Amicus Brief in favor of Nextel's appeal.

5

pay the same effective tax rate, because Pennsylvania courts have consistently rejected such uniformity challenges to the CNI tax.

The Commonwealth disputes Nextel's contention that larger taxpayers were somehow penalized in the 2007 Tax Year. In terms of effective tax rate, the Commonwealth notes that Nextel paid an effective CNI tax rate of 8.75%, less than the statutory rate. The Commonwealth also compares Nextel to a smaller taxpayer that was not in a positive net loss carryover position in 2007 and, therefore, may have paid a *higher* effective tax rate than Nextel did. Also, the Commonwealth emphasizes that even though Nextel's NLC deduction was limited to 12.5%, it was still able to reduce its taxable income by $5.6 million, which is well in excess of the $3 million cap. According to the Commonwealth: "The smaller businesses that are the focus of Nextel's argument never would have been able to take such a large net loss deduction." (Commonwealth Br. at 21.)[7]

The Commonwealth contends that even if you accept Nextel's position that the NLC deduction cap creates some form of classification, the NLC deduction limitations satisfy the constitutional test of "rough" uniformity. The Commonwealth notes that the cap only affected 1.2% of CNI taxpayers in the 2007 Tax Year. The 1.2%, however, like the other 98.8%, were still able to take a net loss deduction of 12.5% of taxable income or $3 million, whichever was greater, and still paid the statutory rate of 9.99%. So while they may have been negatively impacted, in the sense that they had to pay CNI tax, the disparity does not itself

---

[7] We agree with the Commonwealth on this point, because, at most, those smaller corporations, which reported taxable income in the 2007 Tax Year of $3,000,000 or less, can only reduce their taxable income to $0.

6

demonstrate unconstitutionality. The outcome, in the Commonwealth's view, is "nearly perfect" and thus satisfies the constitutional test of rough uniformity. (Commonwealth Br. at 27.)

The Commonwealth also argues that even if the NLC deduction limitations create classifications among taxpayers, the classification is reasonable in that it is rationally related to the legitimate state interest of sensible budgetary planning. The Commonwealth recounts the thirty-year history of the NLC deduction. Throughout this period, the Commonwealth contends that the General Assembly has struggled to balance the pro-growth benefits of the deduction with its negative impact on the Commonwealth's budget. This struggle, the Commonwealth maintains, led the General Assembly to enact legislation in 1991 that suspended the NLC deduction for tax years beginning in 1991. *See Garofolo, Curtiss, Lambert & MacLean, Inc. v. Dep't of Rev.*, 648 A.2d 1329 (Pa. Cmwlth.) (holding that legislation suspending NLC deduction did not violate Uniformity Clause), *appeal dismissed*, 659 A.2d 561 (Pa. 1994). The Commonwealth notes that when the General Assembly reinstated the NLC deduction, it determined that the Commonwealth's budget could only handle a limited NLC deduction. For the 2007 Tax Year, the General Assembly set the limit at the higher of 12.5% of taxable income or $3 million. Although the General Assembly has increased the limitations over time,[8] it has not seen fit to remove the limitations. Because the General Assembly concluded that the Commonwealth could not afford an

---

[8] For tax years beginning after December 31, 2014, the NLC deduction is capped at the greater of 30% of taxable income or $5 million. Section 401(3)4.(c)(1)(A)(VI) of the Tax Reform Code, *as amended*, 72 P.S. § 7401(3)4.(c)(1)(A)(VI).

unlimited NLC deduction, the Commonwealth's position is that Nextel's desire for an unlimited deduction must give way to the General Assembly's wisdom with respect to sensible budgetary planning.

The Commonwealth also rejects Nextel's argument that the General Assembly lacks the authority to enact legislation that benefits small business. Indeed, the Commonwealth contends that the NLC deduction was intended to help small business. The favorable treatment afforded to small business by the NLC provision was an exercise of the General Assembly's wide discretion in matters of taxation. The Commonwealth also points out that not all businesses benefitted from the NLC provision. Of the 46,676 taxpayers that reported positive taxable income apportioned to Pennsylvania during the 2007 Tax Year, less than half availed themselves of the NLC deduction. The Commonwealth also contends that Nextel's business model, which led to many unprofitable years, prevented Nextel from recouping fully its net loss deduction.

Finally, the Commonwealth argues that although the NLC deduction limitations prevented Nextel from fully offsetting its taxable income in the 2007 Tax Year by its net loss carryovers from prior years, the law permits carryover of net losses for twenty years. Any assertion by Nextel that its inability to offset its taxable income in 2007 fully by its net operating losses means that Nextel will forever lose the benefit of the NLC deduction is unfounded and speculative.

In reply, Nextel emphasizes its base premise—*i.e.*, that under the NLC deduction provision, a taxpayer with a net loss carryover from Year 1 of $3 million and income of $3 million in Year 2 will pay $0 in CNI tax in Year 2, but a taxpayer with a net loss carryover from Year 1 of $30 million and income of $30 million in Year 2 will pay $2.6 million in CNI tax for Year 2. Because Nextel

8

contends that Pennsylvania law prohibits tax classifications based on the size of business (as measured by income), the NLC deduction limitations violate the Uniformity Clause. With respect to its effective tax rate argument, Nextel concedes the Commonwealth's point that taxpayers may pay different effective rates based on the nature of their operations and their deductions. Nonetheless, different effective rates cannot be based on a deduction statute that has disparate impact on taxpayers *solely* on the basis of their income level and withstand a uniformity challenge.[9] Here, the effective tax rate rises not solely because of each company's peculiar net loss and income position in a tax year, but also because the statutory scheme imposes a capped deduction that favors those taxpayers with taxable income of $3 million or less.

Nextel also disputes the Commonwealth's "rough" uniformity claim. Nextel argues that "rough" uniformity is not dependent on the number of taxpayers adversely affected, but the degree in difference between the amount of tax paid between taxpayers. Here, Nextel paid $3.9 million of tax while others that, like Nextel were in a positive net loss carryover position, paid $0. According to Nextel, that is not "rough" uniformity.

---

[9] To illustrate Nextel's point, consider a NLC deduction that has no cap. Company A enters Tax Year 2 with a net loss carryover of $1 million and reports taxable income in Tax Year 2 of $3 million. After deducting in full the net loss carryover, Company A pays a CNI tax of $199,800 (9.99% x $2 million), for an effective tax rate on $3 million of income in Year 2 of 6.66%. Company B entered Tax Year 2 with a net loss carryover of $10 million and reports taxable income in Tax Year 2 of $50 million. After deducting in full the net loss carryover, Company B pays a CNI tax of $3,996,000 (9.99% x $40 million), for an effective tax rate on $50 million of income in Year 2 of 7.99%. Although Company B pays a higher effective tax rate under this example, Nextel's position is that the Uniformity Clause is not implicated because the effective rate was not influenced by a classification scheme in the tax law based on taxpayer income; rather, it is the result of the peculiar business operations of each company.

In terms of the legislative history, Nextel does not dispute the General Assembly's authority to eliminate the NLC deduction, as it did in 1991. If it allows the deduction, however, the General Assembly cannot limit the amount of the deduction based on taxpayer income. Nextel also argues that the General Assembly's policy reasons for establishing the NLC deduction limitations are irrelevant. Even if the General Assembly's reasoning was sound and the limits reasonable, the scheme must still be uniform. Moreover, to the extent the Commonwealth's position is that the General Assembly purposefully favored small business over large business when it instituted the NLC deduction limitations, the argument further supports Nextel's uniformity challenge. Nextel notes that if the people of Pennsylvania wished to impose a greater tax burden on large businesses and provide relief to small businesses, they can amend the Constitution, as they have done in other contexts.[10]

---

[10] Nextel cites Article VIII, § 2(b)(ii) of the Pennsylvania Constitution, which, following the section that includes the Uniformity Clause, provides:

> (b) The General Assembly may, by law:
>
> . . .
>
> (ii) Establish as a class or classes of subjects of taxation the property or privileges of persons who, because of age, disability, infirmity *or poverty* are determined to be in need of tax exemption or of special tax provisions, and for any such class or classes, uniform standards and qualifications. The Commonwealth, or any other taxing authority, may adopt or employ such class or classes and standards and qualifications, and except as herein provided may impose taxes, grant exemptions, or make special tax provisions in accordance therewith. . . .

(Emphasis added.)

In terms of whether Nextel has been disadvantaged, seeing as it may carry over net operating losses for a 20-year period, Nextel notes that under the statute, the 20 years is a rolling period, running from each year in which Nextel incurred a net operating loss. For example, a net operating loss incurred in 1998 can only be used to offset taxable income until 2018. If unused by that time, it is lost, or, as Nextel claims, expired. According to the deposition testimony of Terrence D. Frederick, who works for Nextel's parent company, Sprint, and oversees state and local tax obligations for the parent and its subsidiaries, millions of dollars in net operating loss carryovers that could have been applied to reduce Nextel's taxable income in the 2007 Tax Year but for the statutory cap, have, in fact, expired.[11]

A taxpayer challenging the constitutionality of tax legislation bears a heavy burden. *Leonard v. Thornburgh*, 489 A.2d 1349, 1351 (Pa. 1985). First, the taxpayer must demonstrate that the provision results in some form of classification. Second, the taxpayer must demonstrate that the classification is "unreasonable and not rationally related to any legitimate state purpose." *Clifton v. Allegheny Cnty.*, 969 A.2d 1197, 1211 (Pa. 2009); *see Lebanon Valley Farmers Bank v. Commonwealth*, 83 A.3d 107, 113 (Pa. 2013). The legislature, however, has wide discretion in matters of taxation. *Leonard*, 489 A.2d at 1351. It is well-established that tax legislation is presumed to be constitutionally valid and will not be declared unconstitutional unless it "clearly, palpably and plainly violates the constitution." *Free Speech, LLC v. City of Phila.,* 884 A.2d 966, 971 (Pa. Cmwlth. 2005).

---

[11] Stipulation of Facts, Ex. H (Frederick Dep. Tr. at 41:6-41:19).

Furthermore, "[a]ny doubts regarding the constitutionality of tax legislation should be resolved in favor of upholding its constitutionality." *Id.*

Although the Uniformity Clause does not require absolute equality and perfect uniformity in taxation, the legislature cannot treat similarly-situated taxpayers differently. *Leonard*, 489 A.2d at 1352. Where the validity of a tax classification is challenged, "the test is whether the classification is based upon some legitimate distinction between the classes that provides a non-arbitrary and 'reasonable and just' basis for the difference in treatment." *Id.* (quoting *Aldine Apartments, Inc., v. Commonwealth*, 426 A.2d 1118 (Pa. 1981)). In other words, "[w]hen there exists no legitimate distinction between the classes, and, thus, the tax scheme imposes substantially unequal tax burdens upon persons otherwise similarly situated, the tax is unconstitutional." *Id.*

The Commonwealth contends that because the CNI statutory tax rate is the same for all taxpayers (9.99%), there can be no Uniformity Clause violation. This position does not comport with the law. Even where a tax law provides for a fixed statutory tax rate applicable to all taxpayers, the tax scheme may still yield unconstitutionally divergent tax burdens. The Pennsylvania Supreme Court has held: "While reasonable and practical classifications in tax legislation are justifiable and often permissible, *when a method or formula for computing a tax will, in its operation or effect, produce arbitrary, unjust, or unreasonably discriminatory results, the uniformity requirement is violated*." *Clifton*, 969 A.2d at 1211 (emphasis added). We must, therefore, consider whether the NLC deduction, in operation or effect for the 2007 Tax Year, which is part of the method or formula for computing the CNI tax, violated the Uniformity Clause.

12

Based on our review of the parties' Stipulation of Facts, Nextel has demonstrated that the NLC deduction provision in the Tax Reform Code creates classes of taxpayers according to their taxable income. As written, the NLC deduction provision can, and in the 2007 Tax Year did, allow some taxpayers to reduce their taxable income to $0 and, as a result, pay no CNI tax. The same provision can, and in the 2007 Tax Year did, prevent other taxpayers from reducing their taxable income to $0 and, as a result, cause these affected taxpayers to pay at least some CNI tax. Both classes of taxpayers entered the 2007 Tax Year in a positive net operating loss carryover position—*i.e.*, their net operating loss carryover exceeded their 2007 taxable income. The only factor that distinguishes between these two classes of taxpayers (those who paid no CNI tax as a result of the NLC deduction provision and those that paid some CNI tax as a result of the NLC deduction provision) is the amount of taxable income in the 2007 Tax Year. Taxpayers with $3 million or less in taxable income in 2007 could offset up to 100% of their taxable income through the NLC deduction provision, because the statute allows a *greater of* 12.5% of taxable income or $3 million deduction. Taxpayers with more than $3 million in taxable income in 2007, however, under this scheme, could not offset up to 100% of their taxable income. In fact, the higher the taxable income of the taxpayer, the lower the percentage of taxable income the taxpayer could offset through the NLC deduction. Eventually, the amount of taxable income that may be offset bottoms out at the 12.5% statutory rate.[12]

---

[12] Based on the limitation in effect for the 2007 Tax Year, for taxpayers with taxable income of $24 million or less, the maximum NLC deduction was the statutory cap of $3 million. **(Footnote continued on next page…)**

13

Having concluded that the NLC deduction provision of the Tax Reform Code for the 2007 Tax Year treated taxpayers with taxable income in excess of $3 million differently than taxpayers with $3 million or less in taxable income, we must now determine whether this classification is unreasonable and not rationally related to any legitimate state purpose. On this question, we agree with Nextel that a classification based solely on income amount cannot withstand scrutiny under the Uniformity Clause. In *In re Cope's Estate*, 43 A. 79 (Pa. 1899), the Pennsylvania Supreme Court considered a uniformity challenge to the Commonwealth's inheritance tax law,[13] which then exempted $5,000 worth of property from the tax calculation for all estates. Big or small, then, every estate could exclude $5,000 of assets from the calculation of the tax.

Referring generally to the scope and limitations of the General Assembly's power to tax under the Uniformity Clause, the Supreme Court opined that "[a] pretended classification, that is based solely on a difference in quantity of precisely the same kind of property, is necessarily unjust, arbitrary, and illegal." *Id.* at 81. The Court continued:

> These limitations on the power of the legislature mean something. They are plainly intended to secure, as far as possible, uniformity and relative equality of taxation, by

---

**(continued…)**

For taxpayers with taxable income in excess of $24 million, the statutory rate of 12.5% of taxable income yielded the greater net loss carryover deduction.

[13] At the time of *Cope's Estate*, the Uniformity Clause was set forth in Article IX, Section 1 of the Pennsylvania Constitution. That section also vested in the General Assembly the power to exempt certain property from taxation. *Cope's Estate*, 43 A. at 81. In Pennsylvania's current Constitution, the General Assembly's authority to exempt certain property from taxation (Art. VIII, § 2) is set forth separately from the Uniformity Clause.

> prohibiting, generally, the exemption of a certain part of any recognized class of property, and subjecting the residue to a tax that should be borne uniformly by the entire class, and by guarding against any other device that necessarily or intentionally infringes on the established rule of uniformity and relative equality which, as we have seen, underlie every just system of taxation.

*Id.* With this in mind, the Supreme Court held that the inheritance tax scheme violated this constitutional mandate of uniformity and relative equality:

> In any view that can reasonably be taken of these limitations [in the Uniformity Clause], it must be manifest, to any reflecting mind, that the act in question offends against them by undertaking to wholly exempt from taxation the personal property of a very large percentage of decedents' estates, and impose increased and unequal burdens on the residue of the same class of property. If the authority to exempt, etc., which was assumed and exercised by the legislature in this case, is sanctioned by this court, the constitutional rule of uniformity virtually becomes a dead letter, and, in lieu of the will of the people plainly declared in the fundamental law of the state, the unrestrained will of the legislature becomes supreme law on that subject. If the legislature had authority, under the constitution, to do what was done in this case, they had like authority to reverse their order of taxation, etc., and thus impose the tax on personal property amounting in value to $5,000 and less, and exempt therefrom all property of same recognized class in excess of that sum; *and, consequently, they have like authority, in every case, to establish any other arbitrary ratio, between the amount in value of property to be taxed and that which shall be exempt therefrom, in any class of subjects.*

*Id.* (emphasis added).

15

The Supreme Court then returned to its earlier premise, which undergirded its entire reasoning: "The money value of any given kind of property . . . *can never* be made a legal basis of subdivision or classification for the purpose of imposing unequal burdens on either of such classes, or wholly exempting either of them from any burden." *Id.* at 82 (emphasis added). The Supreme Court estimated that approximately 90-95% of estates annually paid no inheritance tax as a result of the $5,000 exemption cap, leaving only 5 to 10% of estates subject to the 2% tax. *Cope's Estate*, 43 A. at 82. In this Supreme Court's words, this disparity "illustrates the injustice and inequality that must result from such special legislation." *Id.*

*Cope's Estate* has stood the test of time, perhaps because of its simple adherence to a straightforward reading of the Uniformity Clause. To the extent the General Assembly exercises its power to tax property, it cannot set a valuation threshold that, in effect, exempts some property owners from the tax entirely. The Commonwealth offers no reasoned or persuasive argument to eschew this precedent in this case. Here, the General Assembly has elected to tax property—*i.e.*, corporate net income. It has also allowed taxpayers to deduct from their taxable income carryover net losses from prior years. By capping that deduction at the greater of $3 million or 12.5% of taxable income, however, the General Assembly has favored taxpayers whose property (*i.e.*, taxable income) is valued at $3 million or less. To the extent these taxpayers are in a positive net loss carryover position, they pay no corporate net income tax—*i.e.*, they have no tax burden. A similarly-situated taxpayer with more than $3 million in taxable income, however, cannot avoid paying tax under the NLC deduction provision. The distinction is based solely on asset value, which is, under *Cope's Estate,* "unjust,

16

arbitrary, and illegal." *Id.* at 81.[14] Moreover, the fact that the NLC deduction provision enabled 98.8% of taxpayers in a positive net loss carryover position to avoid paying any tax in 2007, leaving 1.2% of similarly-situated taxpayers to pay some tax, "illustrates the injustice and inequality that must result from such special legislation." *Id.* at 82.

We must also reject the Commonwealth's claim that the General Assembly had sound budgetary reasons for imposing the NLC deduction limitations. We do not question the General Assembly's ability to impose limitations on the NLC deduction, so long as those limitations do not impose unequal tax burdens on the taxpayers or exempt one class from paying the tax entirely. "[R]egardless of the extent to which the political branches are responsible for budgetary matters, they are not permitted to enact budget-related legislation that violates the constitutional rights of Pennsylvania citizens." *Hosp. & Healthsystem Ass'n of Pa. v. Commonwealth*, 77 A.3d 587, 598 (Pa. 2013). For the reasons set forth above, the limitations in the NLC deduction provision, particularly the operation and effect of the $3 million alternative cap, violate the Uniformity Clause.

Finally, that Nextel and other high-income taxpayers may, in future years, be able to apply unused net losses to reduce taxable income does not change the fact that some taxpayers paid no tax in Tax Year 2007 because of the NLC

---

[14] The arbitrariness of the $3 million limitation is evident in light of *Cope's Estate*. The Commonwealth argues that the General Assembly imposed the $3 million limitation in an effort to benefit "small business." If true, then the General Assembly can define "small business" in a fashion unrestrained by the text of the Uniformity Clause. The Supreme Court expressly rejected such unbridled legislative power in *Cope's Estate.*

deduction provision, while Nextel and others did. A taxpayer should not have to wait twenty years to get the same deduction that another taxpayer, because of a legislatively-imposed cap based solely on the value of the property to be taxed, can take in Year 1.

This brings us to the question of remedy. The Commonwealth contends that if we hold the NLC deduction provision unconstitutional, we should strike the NLC deduction provision in its entirety. We disagree. We do not have before us a facial challenge to the NLC deduction provision and have not analyzed Nextel's claim under that rubric. *See Johnson v. Allegheny Intermediate Unit*, 59 A.3d 10, 16 (Pa. Cmwlth. 2012) (en banc). Instead, Nextel claims that the NLC deduction provision is unconstitutional as applied to Nextel for the 2007 Tax Year. Having resolved that limited question in Nextel's favor, any relief afforded in this case should be confined to remedying that alleged wrong.

"[A]nalysis under the Uniformity Clause of the Pennsylvania Constitution is generally the same as the analysis under the Equal Protection Clause of the United States Constitution." *Clifton*, 969 A.2d at 1211 n.20; *see Commonwealth v. Molycorp, Inc.*, 392 A.2d 321, 323 (Pa. 1978). In *Molycorp*, as a remedy to a Uniformity Clause violation, the Pennsylvania Supreme Court struck the additional tax paid by the taxpayer as a result of the violation. In so doing, our Supreme Court cited with approval the United States Supreme Court's decision in *Iowa-Des Moines National Bank v. Bennet*, 284 U.S. 239 (1931).

In *Iowa-Des Moines National Bank*, the corporate taxpayer alleged that Polk County taxing officers taxed the taxpayer at rates in excess of those used to assess its competitors over a course of years under certain Iowa statutes. The taxpayer sought mandamus against the county taxing officers to compel them to

18

refund the portion of the taxes that had been illegally exacted due to this disparate treatment.  The Iowa Supreme Court held, however, that the objecting taxpayers were not entitled to relief.  In the state court's view, the collection error meant only that "the competing domestic corporations remain, so far as it appears, liable for the balance of the assessments" that they underpaid.  *Iowa-Des Moines Nat'l Bank*, 284 U.S. at 243.  The Iowa Supreme Court held, then, that the only remedy to the harmed taxpayer was "to await action by the taxing authorities to collect the taxes remaining due from their competitors or to initiate proceedings themselves to compel such collection."  *Id.* at 243-44.  In other words, "the discrimination thus affected was remediable only by correcting the wrong under the state law in favor of the competitors and not 'by extending . . . the benefits as of a similar wrong' to the petitioners."  *Id.*at 244.

The United States Supreme Court reversed the Iowa Supreme Court.  It expressly rejected the state court's refusal to afford affirmative relief to the offended taxpayer in the face of discriminatory treatment under the notion that the state could, instead, equalize the tax burden by seeking to recoup the underpaid taxes from the favored taxpayers.  The possibility of recoupment from the favored taxpayers was, in the Supreme Court's view, "not material":

> The petitioners' rights were violated, and the causes of action arose, when taxes at the lower rate were collected from their competitors.  It may be assumed that all ground for a claim for refund would have fallen if the state, promptly upon discovery of the discrimination, had removed it by collecting the additional taxes from the favored competitors.  By such collection the petitioners' grievances would have been redressed; for these are not primarily overassessment.  The right invoked is that to equal treatment; and such treatment will be attained if either their competitors' taxes are increased or their own reduced.  But it is well settled that a taxpayer who has

been subjected to discriminatory taxation through the favoring of others in violation of federal law cannot be required himself to assume the burden of seeking an increase of the taxes which the others should have paid. Nor may he be remitted to the necessity of awaiting such action by the state officials upon their own initiative.

*Id.* at 247.

In *Tredyffrin-Easttown School District v. Valley Forge Music Fair, Inc.*, 627 A.2d 814 (Pa. Cmwlth.), *appeal denied*, 647 A.2d 513 (Pa. 1993), this Court, citing *Molycorp* and *Iowa-Des Moines National Bank*, affirmed a common pleas court's ruling that, as a result of its selective enforcement of a local amusement tax ordinance, the local taxing authority was required to refund amusement taxes remitted by the objecting taxpayer. The remedy endorsed by this Court was to place the discriminated taxpayer in the same position as the benefitted taxpayers. Because of the unequal treatment the objecting taxpayer paid taxes *in excess of* the favored taxpayers. The remedy, therefore, was to refund the excess. *Tredyffrin-Easttown Sch. Dist.*, 627 A.2d at 822-23.

The discrimination in this case derives from the $3 million alternative limitation in the NLC deduction provision. Although we could strike that limitation for the 2007 Tax Year and the similar limitations for the tax years thereafter in an effort to make the statutory scheme uniform, such a statutory revision would not remedy the wrong suffered by Nextel in the 2007 Tax Year. Indeed, striking the $3 million cap, as the dissent proposes, would only serve to highlight the fact that while Nextel paid what it was supposed to pay, many corporate net income taxpayers in the 2007 Tax Year benefitted from the discriminatory cap and thus *underpaid* their corporate net income taxes—*i.e.*, they benefitted from the unconstitutional provision. Without more, then, an order

20

declaring the $3 million cap unconstitutional and striking it from the statute does not remedy the constitutional violation.

Under *Molycorp*, *Iowa-Des Moines National Bank*, and *Tredyffrin-Easttown School District*, the unequal treatment suffered by Nextel must be remedied, and it can only be remedied in one of two ways—the favored taxpayers pay more or Nextel pays less. The latter is the only practical solution. Nextel seeks a refund of corporate net income tax paid in 2007. This is an appropriate remedy. Like similarly-situated taxpayers with $3 million or less taxable income in the 2007 Tax Year, Nextel should be permitted under the NLC deduction provision to reduce its taxable income to $0 by virtue of its positive net operating loss position that tax year.

In response to the Commonwealth's concerns, we fully recognize that our decision in this case could be far-reaching. Nonetheless, our analysis and remedy is appropriately confined to the Commonwealth, Nextel, and the 2007 Tax Year. To the extent our decision in this as-applied challenge calls into question the validity of the NLC deduction provision in any other or even every other context, the General Assembly should be guided accordingly.

_____

P. KEVIN BROBSON, Judge

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nextel Communications of the : 
Mid-Atlantic, Inc., : 
                        Petitioner : 
                                 : 
                v. : No. 98 F.R. 2012
                                 : 
Commonwealth of Pennsylvania, : 
                        Respondent : 

## O R D E R

AND NOW, this 23rd day of November, 2015, it is hereby ORDERED that the order of the Board of Finance and Revenue in the above-captioned matter is REVERSED, and the refund petition of Nextel Communications of the Mid-Atlantic, Inc. (Nextel) is GRANTED. The Department of Revenue is directed to refund Nextel $3,938,220 in corporate net income tax paid for the tax year ending December 31, 2007.

Unless exceptions are filed within 30 days pursuant to Pa. R.A.P. 1571(i), this order shall become final.

 

                                 _____

                                 P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nextel Communications of the      :
Mid-Atlantic, Inc.,      :
             Petitioner      :
     :
        v.      :    No. 98 F.R. 2012
     :    Argued: September 16, 2015
Commonwealth of Pennsylvania,      :
             Respondent      :


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
                 HONORABLE BERNARD L. McGINLEY, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
                 HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE MARY HANNAH LEAVITT, Judge
                 HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE ANNE E. COVEY, Judge


CONCURRING AND DISSENTING OPINION
BY PRESIDENT JUDGE PELLEGRINI          FILED: November 23, 2015


       I agree with the majority that the net loss carryover deduction (NLC deduction) provision in Section 401(3)4.(c)(1)(A)(II) of the Tax Reform Code of 1971 (Tax Reform Code)[1] that allows a net loss deduction that is the greater of the flat percentage of net losses or of a flat capped amount violates the uniformity requirement (Article VIII, Section 1) of the Pennsylvania Constitution (Uniformity Clause). As the majority cogently explains:

> To the extent the General Assembly exercises its power to tax property, it cannot set a valuation threshold that, in

---

[1] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §7401(3)4.(c)(1)(A)(II).

effect, exempts some property owners from the tax entirely. The Commonwealth offers no reasoned or persuasive argument to eschew this precedent in this case. Here, the General Assembly has elected to tax property—*i.e.*, corporate net income. It has also allowed taxpayers to deduct from their taxable income carryover net losses from prior years. By capping that deduction at the greater of $3 million or 12.5% of taxable income, however, the General Assembly has favored taxpayers whose property (*i.e.*, taxable income) is valued at $3 million or less. To the extent these taxpayers are in a positive net loss carryover position, they pay no corporate net income tax—*i.e.*, they have no tax burden. A similarly-situated taxpayer with more than $3 million in taxable income, however, cannot avoid paying tax under the NLC deduction provision. The distinction is based solely on asset value, which is, under *Cope's Estate,* "unjust, arbitrary, and illegal." *Id.* at 81. Moreover, the fact that the NLC deduction provision enabled 98.8% of taxpayers in a positive net loss carryover position to avoid paying any tax in 2007, leaving 1.2% of similarly-situated taxpayers to pay some tax, "illustrates the injustice and inequality that must result from such special legislation." *Id.* at 82. (footnote omitted).

Slip Opinion, p. 13.

The majority, however, pretends that because Nextel is purportedly not making a facial challenge, what is "only" to be declared unconstitutional is the NLC deduction provision as applied to Nextel for the 2007 Tax Year. Realizing the effect that its opinion would have, the majority opinion states that "[t]o the extent our decision in this as-applied challenge calls into question the validity of the NLC deduction provision in any other or even every other context, the General Assembly should be guided accordingly." Slip Opinion, p. 19. Unless our case law means nothing, no matter whether you call it – an "as applied" challenge or a facial

challenge – the net effect of our holding is that Section 401(3)4.(c)(1)(A)(II) can no longer cap the amount of NLC deductions for all taxpayers.  As a result, we must go on to determine whether the flat capped NLC deduction should be stricken making that provision uniform or, as the majority does, eliminate all caps on NLC deductions.[2]

Section 1925 of the Statutory Construction Act, 1 Pa. C.S. §1925, provides, in relevant part:

> The provisions of every statute shall be severable.  If any provision of any statute … is held invalid, the remainder of the statute … shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision … that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

Under the provisions, the unconstitutional provisions should be severed from their constitutional counterparts unless the valid provisions are so essentially and inseparably connected with, and so dependent upon, the void provision or application so that it cannot be presumed the General Assembly would have enacted

_____

[2] The majority relies on *Iowa-Des Moines Nat. Bank v. Bennett*, 52 S.Ct. 133 (1931) and *Tredyffrin-Easttown Sch. Dist. v. Valley Forge Music Fair, Inc.*, 627 A.2d 814, 821 (Pa. Cmwlth. 1993), but those cases have nothing to do with how a tax statute should be interpreted once a provision is found unconstitutional to give effect to the General Assembly's intention.  They are not applicable because neither of those cases dealt with an unconstitutional tax statute, but with the unequal enforcement of a constitutional statute by administrative officials.

the remaining valid provisions without the voided one or that the remaining valid provisions, standing alone, are incomplete and incapable of being executed in accordance with the legislative intent. *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 877 A.2d 383 (Pa. 2005).

The NLC deduction contained in Section 401(3)4.(c)(1)(A)(II) is part of the "Definition" section of the Tax Reform Code which provides, in relevant part:

> (A) (I) For taxable years beginning before January 1, 2007, two million dollars ($2,000,000);
>
> (II) For taxable years beginning after December 31, 2006, the greater of twelve and one-half per cent of taxable income as determined under subclause 1 **or, if applicable, subclause 2 or three million dollars ($3,000,000);**
>
> (III) For taxable years beginning after December 31, 2008, the greater of fifteen per cent of taxable income as determined under subclause 1 **or, if applicable, subclause 2 or three million dollars ($3,000,000);**
>
> (IV) For taxable years beginning after December 31, 2009, the greater of twenty per cent of taxable income as determined under subclause 1 **or, if applicable, subclause 2 or three million dollars ($3,000,000);**
>
> (V) For taxable years beginning after December 31, 2013, the greater of twenty-five per cent of taxable income as determined under subclause 1 **or, if applicable, subclause 2 or four million dollars ($4,000,000);**
>
> (VI) For taxable years beginning after December 31, 2014, the greater of thirty per cent of taxable income as determined under subclause 1 **or, if applicable, subclause 2 or five million dollars ($5,000,000).**

72 P.S. §7401(3)4.(c)(1)(A) (emphasis added).

It is clear that the General Assembly wanted to limit NLC deductions every tax year – with both a flat and percentage cap on deductions. The majority would strike all caps on deductions, which is directly against the legislative scheme of the placement of caps on NLC deductions. If the unconstitutional flat cap deduction is severed for each relevant year highlighted in bold, the uniform percentage deduction would remain, which would be available to all taxpayers. Severing the flat cap provisions would carry out the legislative intent to place a limitation on NLC deductions for each year.

Because the remaining valid provisions of Section 7401(3)4.(c)(1)(A) carry out the intent of the General Assembly, protect the public purse, and are complete and capable of being administered without the severed provisions, I dissent from that portion of the majority opinion that removes the cap on all NLC deductions.

_____
DAN PELLEGRINI, President Judge

Judge Leadbetter joins in this concurring and dissenting opinion.