# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

RB Alden Corp., :
               Petitioner    :
                       :
        v.             : No. 73 F.R. 2011
                       : Argued:  May 12, 2016
Commonwealth of Pennsylvania, :
               Respondent   :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE DAN PELLEGRINI, Senior Judge


OPINION BY
SENIOR JUDGE PELLEGRINI               FILED: June 15, 2016


This is a petition for review from an order of the Board of Finance and Revenue (Board) in which RB Alden Corporation (Taxpayer) claims that it owes no Pennsylvania corporate income tax on a $29.9 million capital gain profit resulting from the sale of part of a partnership interest.  Taxpayer makes that claim on a number of alternative bases contending that:

- gain from a sale of the partnership interest is "nonbusiness income" under Section 401(3)2.(a)(1)(D) of the Tax Reform Code of 1971 (Code),[1] not "business income" under Section 401(3)2.(a)(1)(A) of the Code;[2]

---

[1] Act of March 4, 1971, P.L. 6, No. 2, *as amended*, 72 P.S. §7401(3)2.(a)(1)(D).

[2] 72 P.S. §7401(3)2.(a)(1)(A).

- the gain must be excluded from its apportionable tax base under the doctrines of multiformity or unrelated assets;

- the gross proceeds from the sale of the partnership interest should be sourced to New York, the state in which it is headquartered, for purposes of calculating the sales factor of its corporate net income tax apportionment fraction, rather than Pennsylvania, where the property from which the sale is derived is located;

- under the tax benefit rule, it is entitled to exclude from business income the gain from the sale because it had previously taken a deduction for which it received no benefit; and

- under *Nextel Communications of Mid-Atlantic, Inc. v. Commonwealth of Pennsylvania*, 129 A.3d 1 (Pa. Cmwlth. 2015), limiting its net loss carryover deduction to $2 million violates the Uniformity Clause of the Pennsylvania Constitution, Pa. Const. art. VIII, §1.

We will address each of those issues.

## I.

### A.

According to the parties' Stipulation of Facts, Taxpayer is a Delaware corporation. During the tax year beginning July 1, 2006, and ending June 30, 2007 (Fiscal Year 2006), Taxpayer was wholly owned by Riverbank Properties, Inc. (Riverbank), and Riverbank was wholly owned by RB Asset, Inc. (RB Asset). Accordingly, during Fiscal Year 2006, Taxpayer was indirectly wholly owned by RB Asset.

At the beginning of Fiscal Year 2006, Taxpayer was the sole general partner and owned 87.36% of the limited partnership interest of Eastview Associates LP (Partnership). The Partnership was formed as a New Jersey general partnership in 1984, and in 1989, it converted into a New Jersey limited partnership.

The Partnership owned an apartment complex in Philadelphia known as Alden Park Apartments (Apartment Complex). Prior to 1995, the Partnership borrowed $40 million from National Westminster Bank USA (National Westminster). In connection with the loan, National Westminster obtained a mortgage securing the loan (the mortgage and loan hereinafter collectively referred to as the "Secured Loan"). In January 1995, National Westminster merged with and into National Westminster Bank NJ, which subsequently changed its name to NatWest Bank National Association (NatWest). In March 1995, NatWest sold the Secured Loan to Hampton Ponds, a subsidiary of River Bank America. In May 1998, River Bank America completed a reorganization into RB Assets under which RB Assets assumed all River Bank America's assets and liabilities, including River Bank America's interest in the Secured Loan.

After the Partnership defaulted on the Secured Loan, Taxpayer acquired its general and limited partnership interest in the Partnership as a result of restructuring to give its lender control of the Partnership. As the sole general partner of the Partnership, Taxpayer's only business activity was operating and controlling the Partnership's operations, including those of the Apartment Complex.

Beginning in 1989 and continuing through Fiscal Year 2006, the Partnership incurred and reported a taxable loss from operations which was passed through pro-rata to Taxpayer.  Taxpayer filed federal income tax returns for each tax year from 1989 through Fiscal Year 2006 and reported its share of the Partnership's operational losses.  Likewise, Taxpayer filed Pennsylvania corporate tax reports for each tax year from 1989 through Fiscal Year 2006 and reported 100% of its share of the Partnership's operational losses as business income. Taxpayer did not file an income tax return in any state other than Pennsylvania and never apportioned any of its Pennsylvania taxable income or loss for any tax year. Taxpayer was unable to use its share of the Partnership's losses to reduce Pennsylvania taxable income during the tax years prior to Fiscal Year 2006 as neither Taxpayer nor the Partnership generated any Pennsylvania taxable income during those years.

Taxpayer's assets during Fiscal Year 2006 consisted of its general and limited partnership interests in the Partnership and certain intercompany receivables owed to it by the Partnership.  That year, pursuant to an Assignment, Assumption and Substitution Agreement (Agreement) dated June 27, 2007, Taxpayer sold a 45% limited partnership interest in the Partnership to PCK Capital, Inc. (Buyer).   In exchange for the transferred partnership interest, Buyer transferred $5,000 cash to Taxpayer and assumed $29.9 million of the Partnership's nonrecourse liabilities attributable to the transferred partnership interest.  Taxpayer retained a 42.36% limited partnership interest and a 1% general partnership interest in the Partnership and continued to operate and control the Partnership and the Apartment Complex as before.

In March 2008, Taxpayer filed its 2006 Pennsylvania corporate tax report and 2006 Proforma federal return.[3] The 2006 Proforma federal return reflected a federal taxable income of $24.5 million, which includes a $29.9 million gain on the sale of the transferred partnership interest and a $5.4 million loss on its share of the Partnership's operational losses for Fiscal Year 2006. Taxpayer claimed the $29.9 million gain was nonbusiness income and reported an overall taxable loss for Pennsylvania corporate net income tax (CNIT) purposes on the 2006 Pennsylvania corporate tax report.[4] The Department of Revenue (Department) issued a notice of assessment dated October 13, 2009, disallowing Taxpayer's classification of the gain as nonbusiness income and imposing an assessed CNIT in the amount of $2,243,291 for Fiscal Year 2006, plus interest.[5]

**B.**

Taxpayer filed an appeal with the Board of Appeals challenging the Department's classification of the gain as business income, asserting that the sale of the partnership interest was nonbusiness income and should not be sourced to Pennsylvania. Specifically, Taxpayer argued:

---

[3] The 2006 Proforma federal return was prepared on a separate company basis.

[4] Because it was unavailable, Taxpayer had the 2006 Proforma federal return prepared on a separate company basis. Taxpayer had filed a consolidated federal income tax return as a member of a consolidated group. Taxpayer informed the Commonwealth that its consolidated federal income tax return was destroyed and not available. In lieu of Taxpayer's consolidated federal tax return copy, the affidavit of Marvin Antman, Taxpayer's former accountant, was provided to the Commonwealth with his explanation of the consolidated federal tax return filing for Fiscal Year 2006.

[5] The Department assessed interest in the amount of $286,439.00 as of October 23, 2009.

The Taxpayer, who is a Delaware Taxpayer, had non-business income from the sale of a partnership interest that was not sourced to Penn [sic]. The capital gain from the sale of the partnership interest is not business income as the income was not income arising from transactions & activity in the regular trade or business nor is it income from tangible or intangible property since the management and disposition of the [P]roperty were not integral to the Taxpayer's trade or business. The capital gain should not be allocated to Pennsylvania. The Taxpayer is not in the business of buying or selling their [sic] partnership interest.

(Board of Appeals Petition at 2.) After a hearing, the Board of Appeals denied Taxpayer's request for classifying the sale of the partnership as nonbusiness income, denied its request to source the sale outside of Pennsylvania and sustained the Department's assessment in its entirety.

Taxpayer appealed to the Board, requesting again nonbusiness income treatment for the gain from the partnership interest sale and the ability to source the sale outside of Pennsylvania and seeking to strike the Department's assessment. The Board denied Taxpayer's request, finding that Taxpayer's interests in the Partnership subjected Taxpayer to CNIT because the Partnership does business in Pennsylvania and the partnership sales gain constituted business income:

Because such income was derived from a transaction in the regular course of [Taxpayer's] business, investing in real estate partnerships and receiving income from them. *Welded Tube Co.*,[6] *supra*. The partnership sales gain

---

[6] *Welded Tube Company of America v. Commonwealth*, 515 A.2d 988 (Pa. Cmwlth. 1986).

6

constituted business income for [Taxpayer] under the functional test because the acquisition and disposition of the investment partnerships constituted an integral part of [Taxpayer's] regular trade or business, investment. *See* 72 P.S. §7401(3)2.(a)(1)(A). [Taxpayer] is not entitled to allocate the partnership income under the [Code] because this income is apportionable business income. *See* 72 P.S. §7401(3)2.(a)(4) (allocating rents, royalties, gains or interest only "to the extent they constitute nonbusiness income"); *but see* 72 P.S. §7401(3)2.(a)(9)(A) (subjecting all business income to apportionment).

(Board's December 15, 2010 decision at 10) (footnote added).

The Board further denied Taxpayer's request for multiformity or unrelated assets income treatment, explaining that Taxpayer's tax return, petitions and supporting materials do not show the unrelated nature of the income it seeks to remove from taxation. With regard to Taxpayer's request for exclusion of the partnership sales gains from a sales fraction numerator, the Board reasoned that the request is denied because the gains were apportionable business income and "sales" included in the sales apportionment factor are all gross receipts not allocated under the Code other than dividends, government obligation interest and securities sales proceeds. The Board also found that the Partnership assets in which Taxpayer held a direct interest were located in Pennsylvania, and the sale of such assets makes Taxpayer's sales gains Pennsylvania receipts correctly included in a sales numerator. Finally, the Board found there to be no evidence that the sale of the Partnership interest was "produced by a greater proportion of activity in New York based on costs of performance given the circumstances of this case," thereby denying Taxpayer's request to attribute the partnership sales proceeds to

7

New York. (Board's December 15, 2010 decision at 11.) This appeal by Taxpayer followed.[7]

## II.

## A.

At the outset, we must determine whether the gain realized by Taxpayer from the sale of the Partnership interest is business or nonbusiness income.

"Pennsylvania's corporate income tax is an excise tax on the privilege of earning income and, therefore, under the Commerce Clause of the United States Constitution, Pennsylvania may subject to taxation only that part of corporate income reasonably related to the privilege exercised in this Commonwealth." *Canteen Corporation v. Commonwealth of Pennsylvania*, 818 A.2d 594, 597–98 (Pa. Cmwlth. 2003) (*en banc*), *aff'd*, 854 A.2d 440 (Pa. 2004) (*per curiam*). The Code provides the general procedure for calculating Pennsylvania's corporate income tax and separates income into two classifications: "business income" or "nonbusiness income." "Business income" is defined as:

> [I]ncome arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if *either* the acquisition, the management *or* the disposition

---

[7] In appeals from decisions of the Board of Finance and Revenue, our review is *de novo* because we function as a trial court even though such cases are heard in our appellate jurisdiction. *Glatfelter Pulpwood Company v. Commonwealth of Pennsylvania*, 19 A.3d 572, 576 n.3 (Pa. Cmwlth. 2011) (*en banc*), *aff'd*, 61 A.3d 993 (Pa. 2013).

of the property constitutes an integral part of the taxpayer's regular trade or business operations. The term includes all income which is apportionable under the Constitution of the United States.

72 P.S. §7401(3)2.(a)(1)(A) (emphasis added). "Nonbusiness income" is defined as:

[A]ll income other than business income. The term does not include income which is apportionable under the Constitution of the United States.

72 P.S. §7401(3)2.(a)(1)(D).

There are two alternative independent tests derived from the definition of "business income" by which to evaluate whether income should be classified as business income or nonbusiness income.[8] *Ross–Araco Corporation v. Commonwealth of Pennsylvania, Board of Finance and Revenue*, 674 A.2d 691, 694 (Pa. 1996). Under the transactional test, which is based on the first clause of the definition, a gain is "business income" if it is derived from a transaction in which the taxpayer regularly engages. *Id.* at 693. This test "measures the particular transaction against the frequency and regularity of similar transactions in

---

[8] The Pennsylvania Supreme Court adopted in *Laurel Pipe Line v. Commonwealth of Pennsylvania, Board of Finance and Revenue*, 642 A.2d 472, 474-75 (Pa. 1994), the transactional and functional tests that this Court set forth in *Welded Tube Company of America v. Commonwealth of Pennsylvania*, 515 A.2d 988, 993-94 (Pa. Cmwlth. 1986), to properly classify income as "business income" or "nonbusiness income."

the past practices of the business." *Id.* Also relevant in determining if a gain is "business income" is the taxpayer's subsequent use of the income. *Id.*

The functional test is based on the second clause of the "business income" definition and sets forth that "a gain from the sale of an asset is business income if the corporation acquired, managed, or disposed of the asset as an integral part of its regular business." *Glatfelter Pulpwood Company v. Commonwealth of Pennsylvania*, 61 A.3d 993, 1000 (Pa. 2013) (*Glatfelter II*). Moreover, a gain is "business income" if it "arises from the sale of an asset that produced business income while it was owned by the taxpayer." *Ross–Araco*, 674 A.2d at 693. However, for the purposes of this test, the "extraordinary nature or infrequency of the transaction is irrelevant." *Id.*

Because the Commonwealth agrees that Taxpayer's gain does not satisfy the transactional test because Taxpayer's sale of the Partnership interest was a one-time event and not a transaction or activity in which Taxpayer regularly engages, the only issue is whether it satisfies the functional test. Taxpayer asserts that it does not meet the functional test because the sale of the Partnership interest was a liquidation of a separate and distinct aspect of its business.

Our Supreme Court in *Glatfelter II* addressed the issue of whether income gained from liquidation of a business constituted an exception to the income being deemed business income and determined that it did not. The taxpayer in that case argued, similarly to Taxpayer in this case, that the sale constituted a partial liquidation of a unique aspect of the taxpayer's business and,

thus, was nonbusiness income. The taxpayer relied on *Laurel Pipe* and argued that the Supreme Court had "carv[ed] out an exception from business income for gains derived from the liquidation of a segment of a taxpayer's business" and had "arrived at its holding in *Laurel Pipe* without finding it necessary to parse the statutory language of the definition of business income." 61 A.3d at 1002. Noting that *Laurel Pipe* was decided in 1994, before the 2001 amendment to the statutory definition of "business income," the Court explained:

> Whether the disposition of the timberland was also an integral part of Appellant's regular business operations, pursuant to this Court's precedent in *Laurel Pipe,* is not a matter that we need reach because only the acquisition **or** the management **or** the disposition of the property at issue need be an integral part of the taxpayer's regular business operations under the plain text of the current statute. Accordingly, pursuant to the unambiguous statutory definition, Appellant's gain from the sale of its Delaware timberland constitutes business income.
>
> . . .
>
> Contrary to Appellant's assertion … this Court did indeed parse, to the extent necessary, the statutory definition of business income in *Laurel Pipe.* As discussed above, the statutory definition applicable in *Laurel Pipe* was the pre–2001 version, requiring that "the acquisition, management, *and disposition* of the property constitute integral parts of the taxpayer's regular trade or business." … We concluded that the property at issue in *Laurel Pipe* was not disposed of as an integral part of the taxpayer's regular trade or business, and having resolved the matter on this basis, there was no need for us to address the acquisition or management of the property.
>
> Thus, in *Laurel Pipe,* which was decided in 1994, our analysis and our holding were properly grounded in the statutory definition of business income that was in effect

11

> at that time, prior to the 2001 amendments. We did not, as Appellant suggests, "carv[e] out an exception" to the definition. … Rather, we decided *Laurel Pipe* based upon the prior definition of business income in effect at the time, and we decide the case now before us based upon the revised definition currently in effect. In sum, Appellant's net gain from the sale of the Delaware timberland constitutes business income, as that term is defined by the plain text of the current and only relevant definition.

*Glatfelter II*, 61 A.3d at 1004 (emphasis in original).

Based on the stipulated facts, Taxpayer acquired its interests in the Partnership for the purpose of gaining control over the Partnership. As the Partnership's sole general partner, Taxpayer's sole business activity was directing and controlling the Partnership's operations, including the Apartment Complex operations through its officers and directors. Moreover, RB Assets, Taxpayer's indirect parent, strategically acquired the lender's rights to the Secured Loan in order for Taxpayer to operate and control on its behalf the Partnership and Apartment Complex. Taxpayer's subsequent sale of a portion of its Partnership interest was, therefore, in line with "the management *or* the disposition of the property constitut[ing] an integral part of the taxpayer's regular trade or business operations management," and, thus, the income gained from the sale is business income. *Glatfelter Pulpwood Company v. Commonwealth of Pennsylvania*, 19 A.3d 572, 578 (Pa. Cmwlth. 2011) (*Glatfelter I*) (citation omitted).

Alternatively, Taxpayer argues that if the gain is indeed deemed business income, the gain must be excluded from Taxpayer's apportionable tax base under the doctrines of multiformity or unrelated assets. "Apportionable" income is income that "is divided among states with some nexus to the business based on a formula." *Glatfelter I*, 19 A.3d at 576. More specifically, in calculating the business income of a multistate corporation, Pennsylvania "employs a formula based on the ratio of three factors, to wit, the corporation's payroll, property, and sales within Pennsylvania, to the corporation's total payroll, property, and sales, respectively." *Glatfelter II*, 61 A.3d at 999 (citations omitted). The constitutional theory of multiformity provides that a state may not tax value earned outside its borders unless there is "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344-45 (1954).

Taxpayer contends that because it acquired its partnership interests not for the purpose of engaging in the Partnership's real estate rental operations but instead to give its lender control of the Partnership on account of the Partnership's default in the loan, the gain from the sale of the partnership interest cannot be apportioned to Pennsylvania using the pass-through apportionment factors related to the real estate rental operations conducted by the Partnership.

In *Commonwealth of Pennsylvania v. ACF Industries, Incorporated*, 271 A.2d 273, 276 (Pa. 1970), the Pennsylvania Supreme Court established that a taxpayer may exclude all of its gain when reporting its corporate net income to

Pennsylvania when "the taxpayer either (1) is engaged in a separate business outside of Pennsylvania (the so-called 'multiform' concept) or (2) owns an asset or assets unrelated to the exercise of its franchise or the conduct of its activities in Pennsylvania (the so-called 'unrelated asset' concept)." Recognizing that the multiform or unrelated asset cases are "unique" and highly dependent upon factual considerations, the Court presented three principles to follow in deciding whether apportionment is allowed:

> First, if a multistate business enterprise is conducted in a way that one, some or all of the business operations outside Pennsylvania are independent of and do not contribute to the business operations within this State, the factors attributable to the outside activity may be excluded.

> Second, in applying the foregoing principle to a particular case, we must focus upon the relationship between the Pennsylvania activity and the outside one, not the common relationships between these and the central corporate structure. Only if the impact of the latter on the operating units or activities is so pervasive as to negate any claim that they function independently from each other do we deny exclusion in this context.

> Third, without attempting to preclude exclusion in any given case, we reiterate our statement above that the manufacturing, wholesaling and retailing (or manufacturing and selling) activities of a single enterprise are not fit subjects for division and partial exclusion. On the other hand, a truly divisionalized business, conducting disparate activities with each division internally integrated with respect to manufacturing and selling, may well be in a position to make a valid claim for exclusion.

*Id.* at 279-80.[9]

Taxpayer acknowledged in the Stipulation that it acquired its interests in the Partnership for the purpose of gaining control over the Partnership and thereafter directed and controlled both the Partnership and the Apartment Complex, located in Pennsylvania, to operate them as an integrated whole. Taxpayer then made a strategic business decision to sell a portion of its interest in the Partnership, but retained a 42.36% limited partnership interest, continued to be the sole general partner and maintained its operations over the Partnership as before. For these reasons, we conclude that Taxpayer's interest in the Partnership was integrally related to its business activities in Pennsylvania and, thus, the income from the sale of the Partnership interest is subject to tax in Pennsylvania as business income.

---

[9] The Commonwealth argues that the multiformity or unrelated assets doctrines are antiquated and no longer apply as they were developed out of 1930-40s era Pennsylvania case law attempting to apply the Due Process and Commerce Clauses of the United States Constitution to the Pennsylvania foreign franchise tax. The Commonwealth maintains that *ACF Industries'* holding as it relates to the multiformity or unrelated assets doctrines is inapplicable in this case because *ACF Industries* was decided before the Code was enacted and, instead, it interpreted a 1965 amendment to a 1935 statute, which has long been repealed. The Commonwealth argues that although some of the *ACF Industries'* era analysis may be similar, it does not control the interpretation of the current Pennsylvania definition of business and nonbusiness income adopted by our legislature. Although the Commonwealth is correct in that *ACF Industries* analyzed a statute that is not relevant to this case and that it was decided before the Code was even enacted, this Court, in *Glatfelter I* and the Supreme Court in *Glatfelter II*, used *ACF Industries* in determining whether the multiformity or unrelated assets doctrines apply, even after the definition of "business income" was amended in 2001.

15

## C.

Taxpayer next contends that if the gain is apportionable business income, the gross proceeds from the sale of the partnership interest should be sourced to New York, the state in which Taxpayer is headquartered, for purposes of calculating the sales factor[10] of Taxpayer's corporate net income tax apportionment fraction. Taxpayer argues that the sale of its partnership interest is a sale of intangible personal property for federal income tax purposes and not a sale of its proportionate share of the Partnership's underlying assets or a sale by the Partnership of its assets. It argues that because the calculation of its corporate net income tax base starts with its federal taxable income, and the gain realized on the sale of the Partnership interest is treated as gain from the sale of intangible property for federal income tax purposes, the gross proceeds must likewise be treated as realized from the sale of intangible property for corporate net income tax purposes and sourced to New York pursuant to Section 401(3)2.(a)(17) of the Code because all of the activities associated with the acquisition, holding and disposition of the Partnership interest occurred at the headquarters in New York. We disagree.

Section 401(3)2.(a)(17) of the Code provides that:

Sales, other than sales under paragraphs (16) and (16.1) [(relating to sales of tangible personal property and real property)], are in this State if:

---

[10] Section 401(3)2.(a)(15) of the Code defines "sales factor" as "a fraction, the numerator of which is the total sales of the taxpayer in this State during the tax period, and the denominator of which is the total sales of the taxpayer everywhere during the tax period." 72 P.S. §7401(3)2.(a)(15).

(A) The income-producing activity is performed in this State; or

(B) The income-producing activity is performed both in and outside this State and a greater proportion of the income-producing activity is performed in this State than in any other state, based on costs of performance.

72 P.S. §7401(3)2.(a)(17).

Taxpayer's income-producing activity, the operation and management of the Apartment Complex and the Partnership, are performed in Pennsylvania. The stipulated facts indicate that the Apartment Complex is located in Philadelphia and that Taxpayer's duty is to operate the Apartment Complex. In selling a portion of its Partnership interest, Taxpayer gained income from transferring a portion of its interest in the Partnership and Apartment Complex, located in Pennsylvania. Moreover, any costs that arise in producing the income, that is, operating the Partnership and the Apartment Complex, are generated in Pennsylvania. Nothing in the stipulated facts suggests otherwise or establishes that Taxpayer is involved in income-producing activities and their related costs outside of Pennsylvania.

**D.**

Even if the money derived from a sale of the partnership interest is business income and all of that income is apportionable to Pennsylvania, Taxpayer contends that the tax benefit rule described in *Wirth v. Commonwealth of Pennsylvania*, 95 A.3d 822, 845-46 (Pa. 2014), involving the Pennsylvania personal income tax (PIT), should be applied to this case to allow it to exclude from business income the gain from the sale.

17

**1.**

The "tax benefit rule" is not constitutionally mandated, but instead is a product of federal common law that has its genesis in the United States Supreme Court cases of *Dobson v. Commissioner*, 320 U.S. 489 (1943) and *Hillsboro National Bank v. Commissioner*, 460 U.S. 370 (1983). It is now codified in Section 111 of the Internal Revenue Code (IRC).[11] As we stated in *Marshall v. Commonwealth*, 41 A.3d 67, 93 (Pa. Cmwlth. 2012):

---

[11] The Internal Revenue Code codifies the application of the tax benefit rule, providing in pertinent part:

> (a) Deductions.--Gross income does not include income attributable to the recovery during the taxable year of any amount deducted in any prior taxable year to the extent such amount did not reduce the amount of tax imposed by this chapter.
>
> (b) Credits.--
>
> > (1) In general.--If--
> >
> > > (A) a credit was allowable with respect to any amount for any prior taxable year, and
> > >
> > > (B) during the taxable year there is a downward price adjustment or similar adjustment,
> >
> > the tax imposed by this chapter for the taxable year shall be increased by the amount of the credit attributable to the adjustment.
> >
> > (2) Exception where credit did not reduce tax.--Paragraph (1) shall not apply to the extent that the credit allowable for the recovered amount did not reduce the amount of tax imposed by this chapter.

26 U.S.C. §111.

[T]he tax benefit rule is not a generic doctrine prescribed by the courts to remedy every apparent or perceived inequity or unfairness in an income tax system, state or federal. To the contrary, it was created to address a *specific* and *particular* inequity in the tax system caused by the annual accounting system for taxation. As the United States Supreme Court [in *Hillsboro*, 460 U.S. at 389] recognized:

> The *limited nature of the rule* and its effect on the annual accounting principle bears repetition: *only* if the occurrence of the event in the earlier year would have resulted in the disallowance of the deduction can the Commissioner require a compensating recognition of income when the event occurs in the later year.

(Emphasis in original.)

In explaining the exclusionary aspect of the tax benefit rule, our Supreme Court in *Wirth* stated that the tax benefit rule:

> [A]pplies when a deduction of some sort for a loss is taken by a taxpayer in one year, only to have the amount previously deducted recovered in a following tax year. Normally, the taxpayer would be responsible for including the recovered income on his personal income tax return for the year in which recovery occurred. The tax benefit rule states, however, that the recovery of the previously deducted loss is not includible to the extent that the earlier deduction did not reduce the amount of the tax owed in the year the initial deduction was taken. Put differently, the "rule permits exclusion of the recovered item from income [in a subsequent tax year] so long as its initial use as a deduction did not provide a tax saving." Commentators upon the rule have stated that it is "both a rule of inclusion and exclusion: recovery of an item previously deducted must be included in income;

19

that portion of the recovery not resulting in a prior tax benefit is excluded."

*Wirth*, 95 A.3d at 845-46 (citations omitted).


**2.**

*Wirth* was the first case that addressed the tax benefit rule application to Pennsylvania taxes and it found that the tax benefit rule was not applicable to a tax imposed under the PIT. That case did not discuss whether we should adopt this federal common law rule into Pennsylvania tax law, but stated "the Department has **seemingly** incorporated the rule into Pennsylvania tax law through Table 16-2." *Wirth*, 95 A.3d at 848 (emphasis added). Rather than address that claim, both this Court and our Supreme Court just conducted an analysis to see if it had any tax consequence. Similarly, this is the first time we have been asked to consider whether the tax benefit rule should be adopted for the purpose of how the CNIT is imposed.

The CNIT begins with "federal taxable income" as determined by the provisions of the IRC. 72 P.S. §7401(3)2.(a)(1)(A). The Department of Revenue's regulations (Regulations) further define federal taxable income, in pertinent part, as "income before net operating loss deduction and special deductions … or adjusted under 401(3)1 of the [Code] (72 P. S. §7401(3)1.)." 61 Pa. Code §153.11. We have held that, unless the statutory scheme indicates otherwise, the reference to "federal taxable income" as "incorporat[ing] … those provisions of the IRC which go toward the computation of taxable income for federal purposes."

*Commonwealth v. Rohm and Haas Company*, 368 A.2d 909, 912 (Pa. Cmwlth. 1977).

In their Stipulation of Facts, the parties state that Taxpayer reported a $29.9 million capital gain on its 2006 Proforma federal return. The gain was calculated as the amount realized from the sale of the Partnership interest in the amount of $29.9 million minus Taxpayer's basis in the Partnership interest, zero.[12] *See* 26 U.S.C. §741; 26 C.F.R. §1.741-1(a). The amount realized includes Taxpayer's share of the Partnership's nonrecourse debt attributable to the sale of the Partnership interest and assumed by the Buyer. Taxpayer did not pay any federal income tax on the taxable gain from the sale for the 45% limited Partnership interest because it had federal net operating loss carryovers to offset the gain. Federal net loss carryovers can be used for 20 years after they are incurred and have no limit on the amount that can be deducted. While Pennsylvania also has a 20 year net loss carryover, only $2 million of that carryover can be deducted from Pennsylvania income in the 2006 tax year.

**3.**

Taxpayer claims that we should adopt the tax benefit rule to allow it to use those carryovers in excess of the $2 million cap because it would restore its basis in the Partnership interest in "an amount equal to the Partnership's

---

[12] Taxpayer explains that the gain on the sale of its 45% limited partnership interest was based on dividing its 45% limited partnership interest by its 87.36% total limited partnership interest.

21

operational losses passed through to [Taxpayer] that could not be utilized by [Taxpayer] for [corporate net income] tax purposes." (Petitioner's Brief at 14-15.)

In analyzing whether Taxpayer should be allowed to have the benefit of the exclusionary aspect of the tax benefit rule, let us first start with *Wirth* and assume that the tax benefit rule has been adopted in Pennsylvania. In *Marshall*, 41 A.3d at 94, a companion case to *Wirth*, quoting from *John Hancock Financial Services v. United States*, 378 F.3d 1302, 1305 (Fed. Cir. 2004), we held that at a minimum, taxpayers seeking to avail themselves of the exclusionary aspect of the tax benefit rule must establish three requirements: "First, there must be a loss that was deducted but did not result in a tax benefit. Second, there must be a *later recovery on the loss*. Third, there must be a *nexus between the loss and the recovery*." (Emphasis in *Marshall*). Moreover, in *Marshall*, we stated that the tax benefit rule cannot be used in a way that abrogates provisions of the IRC and/or the Regulations, or where application of the rule would result in a deduction expressly prohibited by the IRC.

Under the first prong of that test, Taxpayer has the burden to establish that it has attempted to take the deduction from which it received a tax benefit in a prior year. As our Supreme Court stated in *Wirth*:

> *Dobson* and its progeny, as well as Section 111 [of the IRC], all require that the attempted exclusion of realized gain be related to a deduction without tax consequence from a prior year. [Taxpayers] have not pointed to any jurisprudence, regulation, or Department policy that states otherwise. Through all of their protestations regarding the mandatory application of the exclusionary arm of the tax benefit rule, [taxpayers] never address this

22

> salient point, nor, more importantly, when they attempted to take the required prior deduction.

95 A.3d at 848. Nothing in the Stipulation states that Taxpayer attempted to take a tax deduction in a prior year without tax consequences; nor have any tax returns been filed for the prior years. For this reason alone, because Taxpayer has failed to meet its burden, the tax benefit rule cannot be used in this case.

As to the second and third prong of the test – requiring that there must be a later recovery on the loss as well as a nexus between the loss and the recovery – these prongs are intertwined. We agree with the Commonwealth that Taxpayer does not meet these two prongs because the deductions it seeks to recoup are operating expenses that cannot be deducted under the tax benefit rule because its losses are in no way related to the capital gain from the sale of the Partnership interest.[13]

---

[13] *See In re Appeal of H.V. Management Corporation*, Decision of July 29, 1981, Cal. Bd. of Equalization (1981), available at: http://www.boe.ca.gov/legal/pdf/81-sbe-081.pdf (last visited May 25, 2016).

*H.V. Management Corporation* is substantially similar to this case. The taxpayer in that case was a corporation that was a general partner in a partnership that developed real estate in California. Like here, the taxpayer did not have other activities or investments other than its interest in the partnership. The taxpayer reported losses from its share of the partnership losses and reported the partnership losses on its federal and state income tax returns. After selling its partnership interest at a gain, the taxpayer attempted to reduce the gain by the amount of its aggregate prior years, asserting that the tax benefit rule excluded the gain. Holding that the tax benefit rule was not applicable, the California Equalization Board reasoned that the taxpayer's operational losses were separate transactions from the taxpayer's gain on the sale of the partnership interest.

**4.**

The Commonwealth also contends that the application of the tax benefit rule does not apply to this case because to do so would be in conflict with the United States Department of Treasury Regulations (Treasury Regulations) Section 1.111-1(a) that disallows depreciation as an expense under the tax benefit rule. The regulation provides, in pertinent part:

> The rule of exclusion so prescribed by statute applies equally with respect to all other losses, expenditures and accruals made the basis of deductions from gross income for prior taxable years … but not including deductions with respect to **depreciation,** depletion, amortization, or amortizable bond premiums.

26 CFR §1.111-1(a) (emphasis added).

In response, Taxpayer first argues that the Commonwealth's assumption that the losses it seeks to exclude were for depreciation is erroneous because the losses were created by the deduction of a number of expenses incurred in the operation of a rental property, including advertising, insurance, interest, wages and salaries and real estate taxes. Depreciation accounted for only a portion of the deductions that created the losses at issue. Unfortunately, Taxpayer does not give us a breakdown of those expenses and neither the Stipulation nor the tax returns set forth how the losses were incurred. We do note, though, that the gain on the federal tax return was characterized as a capital gain.

More substantively, while acknowledging that it does permit depreciation from being excluded from income under the tax benefit rule,

24

Taxpayer contends that Section 1.111-1(a) of the Treasury Regulations goes beyond the language of Section 111 of the IRC as a result of a 1984 amendment to IRC Section 111(a) that removed any reference to debts, prior taxes and delinquency as the only type of items that were subject to the tax benefit rule. IRC Section 111(a) was broadened to address *any* recovery:

> Gross income does not include amounts attributable to the recovery during the taxable year of any amount deducted in any prior taxable year to the extent such amount did not reduce the amount of tax imposed by this chapter.

26 U.S.C. §111(a). As a result, Taxpayer claims that given the amendment, there are now no limitations on the type of deductions that can be excluded from income.

However, as far as we can discern, this regulation has not been challenged and, after the amendment in *American Mutual Life Company v. United States,* 46 Fed. Cl. 445 (2000), it was used by analogy not to allow a life insurance company to exclude from income certain decreases in life insurance reserves otherwise required to be included as income under the IRC.

Given that the IRC grants authority to the United States Department of Treasury to "prescribe all needful rules and regulations for the enforcement of this title," 26 U.S.C. §7805(a), and under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), courts are required to afford an agency discretion to interpret a provision of the agency's organic or enabling statute unless it is inconsistent with the provisions of that statute, we

25

decline to find the Regulation invalid.  If we had found that the tax benefit rule was applicable, we would have ordered a hearing to take evidence on what portion of the deduction was attributable to depreciation; but that is not necessary for the reason set forth, as well as the fact that it is in conflict with the Code provisions regarding the CNIT.

In this case, only tax year 2006 is at issue and Section 401(3)4.(c)(1)(A)(I) of the Code, 72 P.S. §7401(3)4.(c)(1)(A) (I), provides that for taxable years beginning before January 1, 2007, the net loss carryover deduction is limited to $2 million.  Taxpayer's contention that the tax benefit rule should apply because it would otherwise forego the deductions above the $2 million limitation in effect would remove all caps on the net loss carryover, a direct contravention of the above-cited provisions of the Code.  In the context of the CNIT, we decline to adopt the tax benefit rule.

**E.**

Relying on *Nextel Communications of Mid-Atlantic, Inc. v. Commonwealth of Pennsylvania*, 129 A.3d 1 (Pa. Cmwlth. 2015), Taxpayer argues that if the gain is apportionable business income, it is entitled to claim a net loss carryover deduction in an amount equal to 100% of its income apportioned to Pennsylvania.[14]  It contends that limiting its net loss carryover deduction to the $2

---

[14] The net loss carryover provision of the Code, 72 P.S. §7401(3)4.(c)(1)(A)(II), enables a taxpayer to reduce its positive taxable income in a particular year by deducting prior year net losses (*i.e.*, where the taxpayer had negative taxable income), thus reducing the amount of corporate net income tax due and payable in that tax year.  Net losses from prior tax years may be carried over to subsequent tax years and applied to reduce taxable income according to a schedule set forth in Section 401(3)4.(c)(2) of the Code, 72 P.S. §7401(3)4.(c)(2).  The Code **(Footnote continued on next page…)**

million as allowed by the Department violates the Uniformity Clause of the Pennsylvania Constitution, Pa. Const. art. VIII, §1, because it favors smaller taxpayers in positive net loss carryover positions over similarly-situated larger taxpayers, and imposes disparate tax burdens on taxpayers based solely on the amount of income earned.[15]

The Commonwealth acknowledges that this Court held in *Nextel* that the Pennsylvania net loss carryover deduction violates the Uniformity Clause. However it asserts that the decision was limited in application to the Commonwealth, the taxpayer in *Nextel* and the 2007 tax year.[16]    The

---

**(continued…)**

limits the number of years a taxpayer may carry over its net losses as well as the amount of the net loss carryover deduction a taxpayer may take in any given tax year.  For Fiscal Year 2006, for example, the amount of the net loss carryover deduction was $2 million.   72 P.S. §7401(3)4.(c)(1)(A)(I).

[15] In challenging the constitutionality of tax legislation, a taxpayer bears a heavy burden. *Leonard v. Thornburgh*, 489 A.2d 1349, 1351 (Pa. 1985).  The taxpayer must establish:  (1) that the provision results in some form of classification, and (2) that the classification is "unreasonable and not rationally related to any legitimate state purpose." *Clifton v. Allegheny County*, 969 A.2d 1197, 1211 (Pa. 2009).   However, "tax legislation is presumed to be constitutionally valid and will not be declared unconstitutional unless it 'clearly, palpably and plainly violates the constitution.'" *Nextel*, 129 A.3d at 8 (quoting *Free Speech, LLC v. City of Philadelphia*, 884 A.2d 966, 971 (Pa. Cmwlth. 2005)).   That is, "[a]ny doubts regarding the constitutionality of tax legislation should be resolved in favor of upholding its constitutionality." *Id.*

[16] In making this argument, the Commonwealth noted that we clarified in *Nextel*:

> [O]ur analysis and remedy is appropriately confined to the Commonwealth, Nextel, and the 2007 Tax Year.  To the extent our decision in this as-applied challenge calls into question the validity of the [net loss carryover] deduction provision in any other or even

**(Footnote continued on next page…)**

27

Commonwealth further contends that unlike the taxpayer in *Nextel*, the Taxpayer here did not establish that the net operating loss deduction was unconstitutional as applied to it.

Indeed, we held in *Nextel* that based on Section 401(3)4.(c)(1)(A)(II) of the Code, the net loss carryover deduction provision that allows a net loss deduction that is the greater of the flat percentage of net losses or of a flat capped amount violates the Uniformity Clause. We also, as the Commonwealth states, limited the aforementioned holding to the parties in *Nextel* and the 2007 tax year. However, that does not preclude us from performing the same analysis as we did in *Nextel* in determining whether the net loss carryover deduction, insofar as it applies to Taxpayer, also violates the Uniformity Clause.

The Uniformity Clause states: "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax...." Pa. Const. art. VIII, §1. Additionally:

> [a]lthough the Uniformity Clause does not require absolute equality and perfect uniformity in taxation, the legislature cannot treat similarly-situated taxpayers differently. Where the validity of a tax classification is challenged, "the test is whether the classification is based upon some legitimate distinction between the classes that

_____

**(continued…)**

> every other context, the General Assembly should be guided accordingly.

(Respondent's Brief at 58) (quoting *Nextel*, 129 A.3d at 13) (emphasis in brief).

28

provides a non-arbitrary and 'reasonable and just' basis for the difference in treatment." In other words, "[w]hen there exists no legitimate distinction between the classes, and, thus, the tax scheme imposes substantially unequal tax burdens upon persons otherwise similarly situated, the tax is unconstitutional."

*Nextel*, 129 A.3d at 8 (citations omitted).

For Fiscal Year 2006, Section 401(3)4.(c)(1)(A)(I) of the Code limited the amount of the net loss carryover deduction to the lesser of $2 million or the actual amount of the net loss carryovers available for carryover to the tax year. Based on the parties' stipulated facts, in its 2006 Pennsylvania report, Taxpayer reported $43,706,696 of accumulated net loss carryovers. The losses were generated by the unused operational losses passed through to it from the Partnership in the tax years prior to Fiscal Year 2006. Of the $43,706,696 accumulated net loss carryovers, pursuant to Section 401(3)4.(c)(2), $38,969,295 were available for carryover to Fiscal Year 2006. However, per Section 401(3)4.(c)(1)(A)(I) of the Code, Taxpayer was limited to a $2 million deduction.

The stipulated facts show that the net loss carryover provision creates classes of taxpayers based on their taxable income. For Fiscal Year 2006, the net loss carryover provision can and likely did allow some taxpayers to reduce their taxable income to $0 and not have to pay any CNIT. However, that provision can also prevent other taxpayers, as in this case, from reducing their taxable income to $0 and cause these taxpayers to pay CNIT. For Fiscal Year 2006, where both classes of taxpayers entered the 2006 tax year in a positive net operating loss carryover position, the only distinguishing factor between the two classes of

29

taxpayers is the amount of taxable income that year. Those with $2 million or less in taxable income for Fiscal Year 2006 could offset up to 100% of the taxable income as the statute allows a $2 million deduction. However, taxpayers with more than $2 million in income for Fiscal Year 2006 could only offset $2 million and pay CNIT on the remaining income.

In holding the cap on the net loss carryover unconstitutional, we reasoned:

> To the extent the General Assembly exercises its power to tax property, it cannot set a valuation threshold that, in effect, exempts some property owners from the tax entirely…. Here, the General Assembly has elected to tax property—i.e., corporate net income. It has also allowed taxpayers to deduct from their taxable income carryover net losses from prior years. By capping that deduction at the greater of $3 million or 12.5% of taxable income, however, the General Assembly has favored taxpayers whose property (i.e., taxable income) is valued at $3 million or less. To the extent these taxpayers are in a positive net loss carryover position, they pay no corporate net income tax—i.e., they have no tax burden. A similarly-situated taxpayer with more than $3 million in taxable income, however, cannot avoid paying tax under the [net loss carryover] deduction provision. The distinction is based solely on asset value, which is, under *Cope's Estate*, "unjust, arbitrary, and illegal." Moreover, the fact that the [net loss carryover] deduction provision enabled 98.8% of taxpayers in a positive net loss carryover position to avoid paying any tax in 2007, leaving 1.2% of similarly-situated taxpayers to pay some tax, "illustrates the injustice and inequality that must result from such special legislation."

30

*Nextel*, 129 A.3d at 10-11 (citations and footnote omitted). A similar reasoning applies to this case, with the exception being that the cap is $2 million instead of three.

Based on the foregoing, Taxpayer requests that we remedy Section 401(3)4.(c)(1)(A)(I)'s uniformity violation in the same way as we did in *Nextel* by eliminating the cap on the net loss carryover. Accordingly, because the net loss carryover provision contained in Section 401(3)4.(c)(1)(A)(I) of the Code is unconstitutional, we reverse the Board's decision on that basis and calculate the tax without a cap on the net loss carryover.

_____
DAN PELLEGRINI, Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

RB Alden Corp.,                                  :
                    Petitioner                   :
                                                 :
         v.                                      : No. 73 F.R. 2011
                                                 :
Commonwealth of Pennsylvania,                    :
                    Respondent                   :


## **O R D E R**


AND NOW, this 15th day of  June, 2016, it is hereby Ordered that the order of the Board of Finance and Revenue dated December 17, 2010, at No. 1000719 is reversed, and the Department of Revenue is directed to calculate RB Alden Corp.'s corporate net income tax without capping the amount that it can take on its net loss carryover.


_____
DAN PELLEGRINI, Senior Judge